# Richmond.

NATIONAL LIFE ASSOCIATION v. BERKELEY.

NOVEMBER 16, 1899.

Absent, Keith, P.

1. INSURANCE—*Construction of Policy*—"*Indebtedness*" *to Company*—*Unearned Premiums*.—If a plain, unambiguous policy of insurance stipulates that, in consideration of a stated bimonthly premium, there shall be paid to the beneficiary a given sum upon the death of the insured less any "indebtedness due the company" issuing the policy, such "indebtedness" cannot refer to unearned or unaccrued premiums, but must refer to a real or actual indebtedness that the insured or beneficiary is liable for to the company when the policy matures.

2. INSURANCE—*Restrictive Provisions of Policy*—*Sec. 3252 of Code*—*What Must be Written or Printed in Type of Prescribed Size*.—Sec. 3252 of the Code relating to conditions and restrictive provisions of insurance policies is to be liberally construed, in order to fully accomplish the purposes of the act. The words "conditions" and "restrictive provisions" are intended to cover any clause, expression or provision, included in or appended to a policy, whereby the effect of the principal and essential part of the policy is modified, changed, restricted, or otherwise affected, so as to materially influence the rights and liabilities of the insured thereunder. The requirement of the statute that such conditions and restrictive provisions shall be in writing, or printed in type of a given size, is not satisfied by inserting a figure, word, or even a sentence with pen and ink. The whole provision relied on must be in writing or type of the prescribed size, or else it is not available as a defence to an action on the policy.

Error to a judgment of the Hustings Court of the city of Staunton, rendered April 7, 1899, in two motions for judgments

heard together, by consent, in which the defendants in error respectively were the plaintiffs, and in each of which the plaintiff in error was the defendant.

*Affirmed.*

One of these motions was in the name of Robert Spotswood Berkeley against the plaintiff in error, on a policy for $1,000 on the life of F. B. Berkeley; and the other in the names of Francis B. Berkeley and Edmund Carter Berkeley on a like policy for $2,000 on the same life. By agreement of the parties the two cases were heard together. The policies were in all respects similar except as to amounts, names of beneficiaries, and amount of premiums. The following is a copy of the policy for $2,000:

(Face of the Policy.)

" No. V. 820.                                              Age, 59-54.

" The National Life Association,
" Hartford, Connecticut.

"Amount $2,000.                              Premium, $12.50.

" In consideration of the representations, agreements, and warranties made by the insured herein named in his original application made to the Valley Mutual Life Association of Staunton, Va., and upon which application said association issued its policy No. 820, and in further consideration of the acceptance of this policy, with the stipulations and conditions herein contained by said insured during his lifetime, and while in good health, evidenced by the payment of the first bi-monthly premium of $12.50, does hereby issue this policy of insurance to

F. B. BERKELEY,

" of Staunton, County of Augusta, State of Virginia, and conditioned upon this policy being so accepted, and its being continued in force by the further payment at the home office in Hartford, Conn., of bi-monthly premiums as hereinafter pro-

vided, the said Association does hereby promise to pay the sum of two thousand dollars, less any indebtedness due the Association, within ninety days from receipt of satisfactory evidence (as required, upon blanks furnished) of a valid claim conditioned upon the death of the insured from any cause assumed under the terms of this contract to Francis B. Berkeley and Edmund Carter Berkeley (sons), if living, otherwise to the legal heirs or assigns of the insured, this policy being issued by said Association and accepted by the insured upon the express conditions and agreements hereinafter set forth and given on the succeeding pages hereof, and which are assented to as forming part of this contract.

National
Life
Association,
Hartford,
Conn.

" In witness whereof, the said Association has this 30th day of September, 1895, by its duly authorized officers executed this contract at the city of Hartford, State of Connecticut.

" D. S. FLETCHER, *President.*

" H. T. BRAMAN, Secretary."

(Inner Sheet of the Policy.)

" *Conditions and Agreements.*

" 1. This policy does not go into effect until it is accepted by the insured, subject to all its terms and conditions herein named, and the first bi-monthly premium herein named has actually been paid to said Association at Hartford, Conn., during the lifetime and good health of the said insured, and this policy is accepted by the said insured upon the express stipulation, agreement, and condition that the statements in his original application were true at the time they were made, and that he is

now in sound health and free from any disease or habits tending to render him an unfit subject for insurance.

" 2. Notice that a premium is payable to the Association at the home office, Hartford, Conn., on or before 12 o'clock noon on the first week days of the months hereinafter specified is hereby accepted, and any further or other notice is expressly waived. And in the event that the holder of this policy does not receive a notice of the amount of premium which will be due on the days specified herein, an amount equal to the last premium paid shall be paid to the Association on or before the day due, as a condition precedent to the continuance of the policy in force. Non-payment of premium on the dates fixed terminates the policy. Notices given to the member while any payment that has fallen due hereon shall be unpaid, are to be understood as notices only to reinstate membership, and shall not be held to extend maturity of such unpaid payments, nor as waiving proof that the member is alive and in good health, proof of which, to the satisfaction of the Association, shall be tendered with all payments for reinstatement, when the policy may be reinstated at the option of the Association.

" 3. This policy is a bi-monthly contract, renewable at the option of the insured, upon the payment on or before 12 o'clock noon of the first week day of the months of February, April, June, August, October, and December in each year, of such an amount, at current ages, proportioned according to the table of graduated ratios given hereon—as shall be required for the maintenance of its contracts and the prompt payment of all audited claims and expenses. The expense charge to this policy after the first year shall be limited to three-fifths of one per cent. annually of its face value and the actual expenses incurred in protecting and investing the funds of the Association. This policy shall be charged with any unpaid portion of the gross premium of $1,110 which shall be considered and treated as deferred premium until fully extinguished by crediting it with

the amount of all bi-monthly premiums paid, or until this policy becomes a claim, when the unpaid balance thereof shall become due, and, together with any other indebtedness of the parties interested, be deducted from any payment due under this policy. If at any time the proportion of funds credited to this policy shall not equal the reserve calculated for the term written according to the actuaries mortality table with interest at 4 per cent., then this policy may be charged with its share of such deficiency, which, at the option of the executive committee, shall be payable in cash, or be charged as additional interest bearing premium.

" 4. After this policy has been in continuous force for five full years, the Association will annually, in making premium calls, give the insured due credit for his proportionate share of divisible surplus to which this policy may be entitled in reduction of such premium calls. After this policy has been in continuous force for five full years, and while in force, it may be surrendered for paid-up insurance for such an amount as the surplus then standing to its credit will purchase as a single premium at the Association's then rate for such insurance. After it has been in continuous force for ten full years, and while in force, it may be surrendered for cash for seventy-five *per cent.*, of the reserve or surplus then standing to its credit.

" 5. Death in consequence of being engaged in mining, blasting, wrecking, sub-marine operations, railroad or steamboat service, as engineer, fireman or brakeman, or in the production, use, custody, or transportation of highly inflammable or explosive substances; the use of alcoholic stimulants to excess; habitual use of opium or narcotics; death at the hands of justice, or by the insured's own hand, whether sane or insane, or in consequence of a duel, is not a risk assumed under this contract. If during the lifetime of the insured reliable information shall be received by the Association that any of the terms of this contract have been violated, or that any of the warranties or agreements herein contained are untrue, the Association may notify the insured by

registered letter of such information, and if the insured shall fail within thirty days from receipt of such notice to disprove the truth of such information, the same shall be deemed admitted, and this policy shall become null and void. No action shall be maintained, nor recovery had, for any claim upon or by virtue of this policy, after the lapse of one year from the death of the insured.

" 6. The insured may travel or reside in any civilized portion of the world at the time free from war or epidemics; but should death result from being or having been engaged in military or naval service in time of war, or from having changed his occupation to one more hazardous than that named in application, without having first obtained the written consent of the president or secretary permitting such increased hazard; then the amount payable in full satisfaction of this contract shall be from sixty to ninety *per cent.* of the sum otherwise payable, to be determined by the executive committee, according to the nature of the hazardous circumstances causing death.

" 7. Agents are not authorized to waive any provision of this contract, and no payment of premium to an agent shall be binding upon the Association unless such agent shall have first been furnished with a receipt therefor signed by the secretary or other executive officer of the association. And no alteration of any of the provisions of this contract shall be binding unless same be first reduced to writing and assented to and signed by the president or secretary.

" 8. Table of graduated ratios: Ratios above 65 will be fixed by the home office in accordance with mortality tables:

| Age. | Ratio. | Age. | Ratio. | Age. | Ratio. |
|------|--------|------|--------|------|--------|
| 25 | $1 00 | 36 | $1 29 | 47 | $1 82 |
| 26 | 1 02 | 37 | 1 33 | 48 | 1 88 |
| 27 | 1 04 | 38 | 1 37 | 49 | 1 84 |
| 28 | 1 06 | 39 | 1 41 | 50 | 2 00 |
| 29 | 1 08 | 40 | 1 45 | 51 | 2 10 |

Statement.

| Age. | Ratio. | Age. | Ratio. | Age. | Ratio. |
|------|--------|------|--------|------|--------|
| 30 | 1 10 | 41 | 1 50 | 52 | 2 20 |
| 31 | 1 13 | 42 | 1 55 | 53 | 2 35 |
| 32 | 1 16 | 43 | 1 60 | 54 | 2 50 |
| 33 | 1 20 | 44 | 1 65 | 55 | 2 70 |
| 34 | 1 22 | 45 | 1 70 | 56 | 2 90 |
| 35 | 1 25 | 46 | 1 76 | 57 | 3 15 |
| 58 | 3 40 | 61 | 4 30 | 64 | 5 50 |
| 59 | 3 70 | 62 | 4 60 | 65 | 6 00 |
| 60 | 4 00 | 63 | 5 00 | | |

(Endorsement of Policy.)

"Always give number of policy in writing the office."

No. 820.

National Life Association

of

Hartford, Conn., U. S. A.

Policy of Insurance on the Life of

F. B. Berkeley.

Amt., $2,000.                                        Prem., $12.50.

Plan—Bi-Monthly Payment.

Date—September 30, 1895.

Premium Payable

. . . . . . . . . . . .                    Payments of $. . . . . . . . . . . . . . . . . . . .

On. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Agent.

(Copyright in '87, '92, '93, '94, and '95 by D. S. Fletcher.)

Form Ba 2.

Ed. 8, '95.

The figures " $1,100 " on the inner sheet of the policy were written with pen and ink. All of the residue of the inner sheet,

except the words " Conditions and Agreements " was printed in type smaller than " long primer."

*Edmund Pendleton*, for the plaintiff in error.

*A. C. Braxton*, for the defendants in error.

HARRISON, J., delivered the opinion of the court.

The policies for $2,000 and $1,000, respectively, involved in this controversy were originally issued upon the life of F. B. Berkeley by the Valley Mutual Life Association, of Staunton, Va. This company having failed, its subsisting insurance, including the policies in question, was transferred to the plaintiff in error, the National Life Association of Hartford. In lieu of the original Valley Mutual policies, the plaintiff in error issued to the insured the two policies involved herein. These latter policies were on their faces like the originals, for $2,000 and $1,000, respectively. As each policy presents for determination the same questions we will follow the example of counsel and consider only that for $2,000. This policy is upon its face a plain, unambiguous contract, by which the plaintiff in error agrees, in consideration of the stated bi-monthly premium of $12.50, to pay the beneficiaries, upon the death of the insured, two thousand dollars, less any indebtedness due the association; and is issued by the association, and accepted by the insured upon the express conditions and agreements given and set forth upon the succeeding pages thereof, which are assented to as forming part of the contract.

The only defence to this action is that the plaintiff in error is entitled to credit the face of the policy for $2,000 by certain premium liens provided for among the conditions and agreements printed on the succeeding pages of the policy. This claim is met by the defendant in error with the answer that the conditions and agreements relied on are not printed in type of the size required

by section 3252 of the Code, and therefore cannot avail to alter or change the plain terms of the contract between the parties expressed on the face of the policy.

It is conceded that the conditions and agreements relied on are printed in type condemned by the statute as insufficient. It is, however, contended that the " deferred premium " or premium lien now sought to be deducted, is a part of the indebtedness due the association, which is referred to on the face of the policy as an item of credit before payment. This position is not tenable. The premiums referred to have never accrued or been earned, and now that the insured is dead, can never become due. The " indebtedness due the company " that is referred to in the policy is obviously any actual or real indebtedness that the insured or beneficiary may be liable for to the company when the policy matures. If premiums could constitute part of such indebtedness it could only be past due and fully earned premiums, as distinguished from future and unearned premiums.

It is further contended by the plaintiff in error that the clause in question is neither a " condition," nor a " restrictive provision," but an " agreement," and therefore is not affected by the statute which requires such provisions to be in type of a prescribed size.

The language of section 3252 is that " *no failure to perform any condition of the policy, nor violation of any restrictive provision thereof, shall be a valid defence to such action, unless it appears that such condition or restrictive provision is printed in type as large or larger than that commonly known as long primer type, or is written with pen and ink in or on the policy.*"

This statute was designed to supply a remedy for an existing evil, and is not to be frittered away by nice distinction between " conditions " and " agreements." It should rather receive a liberal construction, in order to fully accomplish the wise and manifest purpose of its enactment. It is obvious that the terms, " conditions," and " restrictive provisions " contained in the

statute were not meant in any narrow or technical sense; but were intended to cover any clause, expression, or provision, included in or appended to a policy, whereby the effect of the principal and essential part of the policy is modified, changed, restricted, or otherwise affected, so as to materially influence the rights and liabilities of the insured thereunder; and to make such clause or provision of no effect as a defence unless it be printed in type of the size prescribed. If this were not so, the whole object of the statute could be defeated by merely changing the verbiage or grammatical arrangement of a clause so as to make it in form an " agreement," rather than a " condition," or " restrictive provision." It might well be argued that the clause under consideration is, in substance and effect, both a condition and a restrictive provision, but this is not necessary. The effect being to take from the beneficiary more than one-half the face value of the policy, it is a matter of no consequence whether the language used be technically in the form of a " condition," an " agreement," or a " restrictive provision," for the statute applies with equal force in either case, and under its terms when such a provision is not in type of the prescribed size, it cannot be availed of as a valid defence.

The third and last contention is that, inasmuch as the statute provides that the provision relied on may be either in writing, or type of the prescribed size, and inasmuch as the figures " $1,110.00," denoting the amount of the deferred premiums, claimed as a credit, are inserted in the provision with pen and ink, this relieves the whole clause from the operation of the statute. It is insisted that these figures are sufficient, because, being in writing themselves, the beneficiary is bound by knowledge of them, and having such knowledge he must also be chargeable with notice of the context, without which the figures would be meaningless, notwithstanding such context is in small type.

This same argument would serve with equal force if the obnoxious provision had inserted somewhere in it, only one word,

letter, or figure with pen and ink. The terms of the statute are plain, and its object equally clear. To give it the narrow construction contended for would practically destroy its value. It is not a question of notice. The provision relied on must be in writing or in type of a prescribed size, and this requirement cannot be satisfied by inserting a figure, letter, word, or even a sentence, with pen and ink. The whole provision relied on must be in writing, or type of the prescribed size, or it cannot be availed of as a defence to any action on the policy.

In conclusion, we are of opinion that the clauses on the inner sheets of the policies involved in this case, whereby the amount the defendants in error would otherwise be entitled to recover is reduced, are clearly obnoxious to the spirit and intent of section 3252 of the Code, and therefore cannot be invoked nor relied on by the plaintiff in error as a defence.

For these reasons, the judgment of the lower court must be affirmed.

*Affirmed.*