## Wytheville.

Cline v. Western Assurance Company.

June 11, 1903.

1. Marine Insurance—*Stress of Weather—Proximate Cause—Collision.*— In an action on a marine policy insuring a ship and its machinery against loss or damage occasioned by the breaking of machinery caused by stress of weather or collision, a declaration which charged that the ship collided with some sunken or floating obstruction in the river, while proceeding on her journey; that there was a freshet and strong current in the river, and that the injuries to the machinery particularly set forth and enumerated in the declaration were caused by such collision with such obstruction in the then prevailing freshet and strong current, does not state a good cause of action. The proximate cause of the injury to the machinery was not the "Stress of weather," and striking a "sunken or floating obstruction" was not a "collision" in the sense in which that term is used in Marine Insurance.

2. Insurance—*"Conditions" and "Restrictive Provisions"—Code, Sec. 3252, Construed.*—Section 3252 of the Code provides in what size type "conditions" or "restrictive provisions" of insurance policies shall be printed, but has no application to the general indemnity clause of the policy, nor to specifications merely of the loss or damage for which the insured had assumed responsibility. Stipulations with respect to the risks insured against, which impose no onus on the insured, and with respect to which he could not be guilty of any act of omission or commission which could affect his right of recovery, are not within the statute.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered January 24, 1902, in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Edward R. Baird, Jr.*, for the plaintiff in error.

*Hughes & Little* and *Daniel H. Hayne*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This was an action of assumpsit on a policy of marine insurance covering the plaintiff's interest in the steam tug Annie. The policy was issued from the Baltimore office of the defendant company, and was mailed by its agents there to the plaintiff, who then resided in the city of Richmond.

The contract of insurance consists of a policy in usual form, with a rider attached, and contains the stipulation that the provisions of the rider are to be regarded as a substitute for those of the policy in case of conflict.

After a general indemnity clause embracing the "hull, tackle, apparel and furniture, engines, boilers, machinery, and stores of the good tug called Annie," there is excepted from the risks assumed "loss or damage caused by the bursting or collapsing of boiler or boilers, or the breaking of machinery, unless caused by stress of weather, stranding, burning, or collision."

The trial court sustained a demurrer to the last amended declaration, and rendered judgment for the defendant. To that judgment a writ of error was allowed by one of the judges of this court.

The declaration avers "that the said tug Annie, . . . while proceeding down the James river from the port at Richmond, sustained injuries whereby her connecting rod, light-pressure cylinder, high-pressure cylinder, head-strap, and key and cross-head were broken, and her piston rod bent, and . . . that the injuries aforesaid were caused by collision and stress of weather; that when said tug . . . was off

Chaffin's Bluff the said tug collided with some sunken or float-
ing obstruction; that there was a freshet and strong current in
the river; that the injuries aforesaid were caused by such col-
lision with such obstruction in the then prevailing freshet and
strong current."

It will be observed that the gravamen of the complainant is
damage to the machinery, and it appears from the statement in
the declaration as to the manner in which the accident hap-
pened that the proximate cause of it was impact with the
"sunken or floating obstruction," and not stress of weather.
If there had been no obstruction in her course, it is quite ap-
parent that the tug would have been unaffected by "the pre-
vailing freshet and strong current" in the river.

The law cannot consider the causes of causes, and an insurer
is only liable for losses proximately occasioned by the perils in-
sured against; the maxim being "*Causa proxima, non remota,
spectatur.*" Broom's Leg. Max. 217; *Insurance Co. v. Reynolds*,
32 Gratt. 613; *Insurance Co. v. Adams*, 123 U. S. 67; 8 Sup.
Ct. 68, 31 L. Ed. 63; *Magoun v. Insurance Co.*, 1 Story, 164,
Fed. Cas. No. 8,961; *Peters v. Insurance Co.*, 14 Pet. 109, 10
L. Ed. 371.

In the view taken by this court of the case, it involves the
consideration of two propositions:

(1) Was the disaster, which is the ground of action, caused
by a "collision" within the meaning of the policy? And, if it
was not,

(2) Does the type statute (Code Va. 1887, sec. 3252) apply
to and render invalid the machinery clause of the rider for the
reason that it is printed in type of smaller size than long primer
type?

It is not pretended that the injury described in the declara-
tion was caused either by stranding or burning, and, as re-
marked, the contention that it was proximately caused by stress
of weather is not maintainable.

Unless, therefore, striking the sunken or floating obstruction constituted a collision in the sense of the policy, there can be no recovery under the first proposition.

It must be borne in mind that the court is dealing with a contract of marine insurance, and it is in that relation that the meaning of the term "collision" is to be ascertained. Bouvier defines it to be "the act of ships or vessels striking together, or of one vessel running against or foul of another." Bouvier's Law Dict. (Rawle's Revision) 349.

The case of *Richardson* v. *Burrows*, decided in Queen's Bench, December 16, 1880, is precisely in point.

The action was on a marine policy which contained the following clause: "Warranted free from particular average (partial loss) unless the ship or craft be stranded, sunk in collision, or on fire"; and the question was whether striking a sunken wreck was a collision within the meaning of the policy. Lord Coleridge, who presided at the trial, held that it was not, and says in that connection: "It (collision) means collision with another ship, and does not mean either rock, or sand bank; or floating wreck, or anything but the ordinary meaning, in my judgment, of collision." The case was not appealed.

In the case of *Hough* v. *Head*, 54 L. J. Q. B. 294, the charterers were operating a vessel under a charter party which provided:

"That in the event of loss of time by deficiency of men, collision, breakdown of engines, and the vessel becomes incapable of steaming or proceeding for more than forty-eight working hours, payment of hire to cease until such time as she is gotten in an efficient state to resume her voyage."

The charterers had taken out a policy against loss of freight on the vessel being operated under the charter. The vessel, while passing through the Straits of Magellan, struck some soft substance with her bottom amidships, but did not lose headway. At the end of the voyage it was discovered that her keel was

broken, and that she had become incapable of steaming for some time. Suit was brought against the underwriters for loss of freight while the vessel was undergoing repairs.

Among other defences, it was insisted that there was no collision.

Grove, J., said: "I am also in favor of the defendant on the other two grounds, though it is really unnecessary to say much about them. I think that what happened did not amount to a collision. The vessel probably ran on to a bank, and this was not, as it seems to me, a collision within the ordinary acceptation of that term, such as would be the case if a vessel struck another vessel or other navigable matter, such as a raft. . . . On these grounds the defendants are, in my opinion, entitled to judgment."

"It will be noticed that, in order to bring the collision clause into operation, there must be a collision between the ship insured and some other ship or vessel, and that the only damages insured against are (in the ordinary forms of the clause) sums payable to the owners of the latter vessel in consequence thereof. The ship-owner is, therefore, not protected against liability due to his vessel running into a dockwall, breakwater, pontoon, or anything that is not another ship. Nor even where there has been a collision between his ship and another ship is he indemnified in respect to any damages which he may, in consequence thereof, be compelled to pay to any third person." 2 Arnold on Marine Ins., secs. 795, 796. See also 2 Marshall on Marine Ins. bk. 1, sec. 2., p. 494; Emerigon on Ins. (Meredith Ed.), p. 327; 2 Browne on Civil and Admiralty Law, p. 111; *Everard* v. *Kendall,* L. R. 5 C. P. 428; *Robson* v. *The Kate,* 21 Q. B. D. 13.

The authorities relied on by counsel for plaintiff in error cannot be fairly said to be in conflict with the foregoing citations.

Spencer on Marine Collisions, sec. 10, says: "The term 'collision,' in the strict nautical and legal acceptation of the

term, means the impinging of vessels together. Common usage, however, has extended the application of the term so as to include the impact of a vessel with other floating objects."

The author proceeds to divide collisions into two classes—those occurring between vessels and other floating objects, and those occurring with fixed and stationary objects.

He quotes the decision of *The Maxey,* F. C. 9,894, to sustain the doctrine that common usage has extended the application of the term so as to include the impact of a vessel with other floating objects. The real language of that opinion is: "This clearly is not a case of collision within the nautical acceptation of that term, which imports the impinging of vessels together whilst in the act of being navigated. Common usage, however, applies the term equally to cases where a vessel is run foul of when entirely stationary, or is brought in contact with another by swinging at her anchor."

The author also states that Lord Coleridge held in *Richardson* v. *Burrows, supra,* that the striking of a ship on a field of ice is not a collision. As has been seen, his lordship's ruling in that case was in respect to a ship striking a sunken wreck, and not a field of ice, as supposed.

. In the concluding paragraph of the section the author says: "Our courts have repeatedly held that actions may be maintained in admiralty for damages arising from contact of a vessel with rafts, and a variety of floating objects, and no reason is apparent why these mishaps may not be designated as collisions."

Courts of admiralty have jurisdiction over all torts occurring on navigable waters, and the cases with which the decisions adverted to dealt were marine torts, and not collision. 3 Joyce on Ins., sec. 2252, is relied on to sustain the contention that, where a vessel is insured against a collision, a recovery may be had for an injury occasioned from running against a snag.

The English case referred to as supporting the text is that of

*Reischur* v. *Borwick*, 2 Q. B. 548, decided in the year 1894. The language of the policy sued on was: "Only against risk of collision (as per clause attached), and damage received in collision with any object, including ice."

The court held that the first part of the sentence alluded to collisions between ships, but allowed a recovery because the injury·from the snag was embraced by the language "collision with any object."

Lindley, L. J., says: "The risk of collision as 'per clause attached' refers to collisions with other ships, and may be disregarded. The other risk refers to and includes such a collision as took place in the present case, viz., a collision between the ship insured and a snag in the river which she was navigating." Lopes, L. J., says: "This is a policy indemnifying the insured against 'the risk of collision' (by which I understand collision with other ships) 'and damage received in collision with any object, including ice.' "

In section 2753 of Joyce on Insurance, the quotation is from the case of *Insurance Co.* v. *Borwick*, 2 Q. B. 279, decided in the year 1895. The language of the policy there was: "Against risk or loss or damage through collision with any other ship or vessel, or ice, or sunken or floating wreck, or any other floating substance, or harbors or wharves, or piers or stages, or similar structures."

The judge says: "It is contended that the losses in the present case do not come within a clause insuring against loss by collision, but the clause in question here is much more extensive in its exemption."

*Borrows* v. *Bell*, 4·B. & C. (10 E. C. L.) 736, was a case in which a vessel coming into a crowded harbor during a storm struck upon an anchor, and, springing a leak, was beached by the crew. The question involved was whether that was a case of stranding. It does not appear that the policy contained anything on the subject of collision.

The remaining authority relied on is the case of *London Assur. Co.* v. *Campanhia*, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113, in which it was held that "vessels may be in collision within the meaning of an insurance policy, although but one of them is in motion while the other is at a wharf, fully loaded, and ready to proceed upon her voyage."

It seems clear that it cannot be predicated of the foregoing authorities that they sustain the contention that the injuries complained of are covered by the collision clause of the policy in question. To the contrary, the decisions are practically unanimous the other way.

The second proposition involves the construction of section 3252 of the Code of Virginia of 1887, which reads as follows:

"In any action against an insurance company or other insurer, . . . no failure to perform any condition of the policy, or violation of any restrictive provision thereof, shall be a valid defence to such action, unless it appears that such condition or restrictive provision is printed in type as large as or larger than that commonly known as long primer type, or is written with pen and ink in or on the policy."

It is insisted that the paragraph in the rider to the policy "Warranted free from claim for loss or damage caused by the bursting or collapsing of the boiler or boilers, or the breaking of machinery, unless caused by stress of weather, stranding, burning, or collision," is invalid, because it is printed in smaller type than that prescribed by statute.

It may be remarked that the paragraph in question and the general indemnity clause are printed in the same type. So there is nothing in the circumstance that the machinery clause is in smaller type than long primer type to indicate a purpose on the part of the insurer to mislead the insured with respect to the provisions of that clause.

The statute in terms specifies "conditions" and "restrictive provisions," which impose upon the insured the performance of

some function the nonperformance of which would defeat a re-
covery in an action on the policy, provided such "condition" or
"restrictive provision" is printed in type of the size required,
or is written with pen and ink. It can have no application,
therefore, to the machinery clause, since that clause imposes
the performance of no duty upon the insured; and in no event
could his right of recovery be affected by any act done or
omitted to be done by him in regard to it. It is apparent that
the policy of the statute is to require such "conditions" or "re-
strictive provisions" as impose an obligation upon the insured
to do or to abstain from doing some act to be so plainly printed
as not to escape observation. Otherwise, as experience has
proved, his right of recovery might be defeated by the neglect
to perform a requirement of the existence of which he is
wholly ignorant. In other words, the design of the enactment
is to protect the insured from being entrapped, by the use of
small type, into omitting the performance of some act required
as a condition precedent to a recovery, such as furnishing an
appraisement, proof of loss, and the like.

But stipulations of the policy with respect to the risks in-
sured against, which impose no onus on the insured, are not
within the statute.

The machinery clause is plainly of the latter class. It enjoins
no duty upon the insured, and, with respect to it, he can be
guilty of no offence, either of commission or of omission, which
could by possibility affect his right of recovery in an action on
the policy.

It contains a specification merely of the loss or damage for
which the insurer has assumed responsibility, and there can be
no more reason for holding that the type statute applies to
that clause than to the general indemnity clause. The statute
does not prescribe the size of type in which that class of stipu-
lations shall be printed.

The case of *Life Association* v. *Berkeley*, 97 Va. 571, 34 S.

E. 469, is relied on as sustaining a different construction of section 3252, but the condition of the policy construed in that case was distinctly of the character proscribed by the statute. The association issued a policy on the life of F. B. Berkeley for $2,000 (in consideration of bimonthly premiums of $12.50), to be paid upon the death of the insured, less "any indebtedness due the company." On the inner sheet of the policy, in fine type, there was a provision that the policy should be charged with any unpaid portion of a gross premium of $1,110. In other words, the policy entitled the beneficiary to receive $2,000 upon the death of the insured in consideration of the payment of the bimonthly premiums; whereas the provision referred to required the payment, in addition, of such part of a gross premium of $1,110 as might remain unpaid by the bimonthly premiums at the death of the insured. The provision imposed an obligation not embraced in the body of the policy, which, if upheld, would have defeated *pro tanto* a recovery on the policy. The court, therefore, properly held that the stipulation was within the prohibition of the statute, and therefore invalid.

So, in *Burruss* v. *National Life Ass'n,* 96 Va. 543, 32 S. E. 49, the court, after declaring the application to be a part of the contract of insurance, said: "In the case at bar it is conceded that the conditions and restrictive provisions found in the application, the failure to perform which is relied on by the defendant, in part, as its defence to the plaintiff's motion, are in type smaller than that required by the statute. The clause in the application obnoxious to this provision of the statute must, therefore, be disregarded, and the case considered as if no conditions or restrictive provisions were embodied in the contract sued on."

It was also insisted on behalf of defendant in error that the policy became effective in Maryland, and for that reason the Virginia type statute does not apply; but, the case having been

disposed of on other grounds, the decision of that question is deemed unnecessary.

In both aspects of the case this court is of opinion that the law on the demurrer is with the defendant, and that the judgment of the trial court in so holding is without error, and must be affirmed.

*Affirmed.*