LAMONT G. BURNHAM (afterwards MARIA A. BURNHAM & others, executors,) *vs.* CHINA MUTUAL INSURANCE COMPANY.

SAME *vs.* COLONIAL ASSURANCE COMPANY.

SAME *vs.* NEW YORK FIRE INSURANCE COMPANY.

SAME *vs.* UNITED STATES FIRE INSURANCE COMPANY.

SAME *vs.* ORIENT INSURANCE COMPANY.

SAME *vs.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY.

SAME *vs.* MANNHEIM INSURANCE COMPANY.

Suffolk.     May 18, 1905. — September 9, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Insurance, Marine.*

An injury to a vessel from striking some portion of the masts, spars, sails or rigging of the wreck of a vessel sunk several hours before and never raised, and the cost of raising which would exceed her value when raised, is not caused by a " collision with another vessel " within the meaning of a policy insuring against such a risk.

SEVEN ACTIONS OF CONTRACT, each on a policy of marine insurance, by the owner of the steamship Shawmut for injuries to that vessel alleged to have been caused by coming into collision with the schooner Abraham Richardson in Vineyard Sound on April 1, 1900. Writs dated September 13, 1900. The original plaintiff having died, the executors under his will were admitted to prosecute the actions.

In the Superior Court the cases were submitted on an agreed statement of facts. That court in each of the actions ordered judgment *pro forma* for the defendant; and the plaintiff appealed.

The agreed statement of facts contained the following :

On April 1, 1900, at four o'clock in the morning, the steamship Shawmut, seaworthy in every respect, left the port of Boston with a barge in tow on a voyage to Newport News.

At about half-past eight on the same morning, the two-masted schooner Abraham Richardson, on a voyage from New York to Rockland, Maine, having on board a cargo of about two hun-

dred and thirty tons of soft coal, and being seaworthy and in good condition, stood out from the harbor of Vineyard Haven. Shortly before nine o'clock of the same morning, when just outside of the harbor, the Abraham Richardson came into collision with the barge Alaska, then in tow of the tug Swatara. The Alaska struck the Abraham Richardson on her starboard side just aft of the fore rigging, and cut a hole in her half way into the main hatch, sufficient to sink her immediately. She sank at once.

The Abraham Richardson went down somewhat head first listed to starboard. Just after she sank the upper ends of both of her masts were out of water. At about two o'clock in the afternoon of that day, when the tide turned, she righted, and both topmasts, and about fifteen feet of her masts were out of water. The masts were about seventy-two and seventy-four feet high respectively. The depth where she sank was about fifty-four feet at low water. None of the sails were above water at any time after she sank. The peaks were dropped.

At about nine o'clock on the evening of April 1, 1900, the Shawmut, while on her voyage to Newport News, struck some portion of the masts, spars, sails or rigging of the Abraham Richardson, whereby the Shawmut sustained the loss or damage for which these actions were brought.

At the time of the striking the Shawmut was drawing thirteen and one half feet of water aft and nine and one half feet forward. The captain was in the pilot house with the window open and his head out. The lookout on the forecastle reported a buoy close to the bow. The captain saw something looming up by the forerigging on the port bow and stopped his ship at once. Next he heard quite a jar abaft the engine deck, which is amidships. As soon as the captain thought that the Shawmut was clear he rung to go ahead again; but, finding that he made no headway, he anchored. The next morning he discovered that the propeller was gone entirely from the stern and that the tail shaft was broken. At the time of striking, the Shawmut was going through the water at about seven and one half miles an hour with the tide against her. The next morning the captain saw two masts sticking up. The mainmast had a topmast on it; the foremast was broken off some six or eight feet below the

cross tree. The captain of the Shawmut was not able to see the hull of the Abraham Richardson at any time.

The captain employed a diver to look for the propeller; the diver failed to find it, and the Shawmut was towed to Boston where she was repaired, being detained in and about such repairs for some days.

The Abraham Richardson has never been raised. No attempt has been made to raise her. The only known effect on her of the striking by the Shawmut was to break off a part of her foremast. The condition of the Abraham Richardson just before being struck by the Shawmut was such that it would have been physically possible to raise and repair her, but only at a cost which would exceed her value when raised and repaired. Such condition was due to the collision with the Alaska and not to the striking by the Shawmut. The Abraham Richardson was not insured. On April 10, 1900, the United States government officials removed her spars and floating wreckage.

The coal has never been raised; and could not be raised, except at a cost which would exceed the value of the coal when raised. Such condition was due to the collision with the Alaska and not to the striking by the Shawmut. The coal was insured, and the owners of the coal recovered for its total loss from the insurer.

*A. H. Russell*, for the plaintiff.

*J. D. Bryant, L. E. Griswold & A. L. Howard*, for the defendants.

LATHROP, J. Some of the policies in these cases cover " the risk of collision sustained " and others are against " loss sustained by collision with another vessel." We are of opinion that the two forms mean the same thing, namely, collision with another vessel. We agree with the plaintiff that if a vessel is temporarily aground, or at anchor, or at her dock, and is run into by another vessel, this is a collision with another vessel within the meaning of the policies. *London Assurance* v. *Companhia De Moagens Do Barreiro*, 167 U. S. 149, and cases cited. So, it may be true, as was decided in *Chandler* v. *Blogg*, [1898] 1 Q. B. 32, that where a vessel strikes another vessel which is at the time under water, and resting on the bottom, this is a collision within the meaning of the policy, if the vessel is raised

within a few hours.  Mr. Justice Bigham in this case adopted the view that " collision " when used alone, without other words, meant two navigable things coming into contact; and that the sunken vessel, though she could not be navigated at the time, was still navigable, as she was raised within a few hours.

In the cases at bar the plaintiff's vessel struck a wreck, sunk several hours before, and which was never raised.  While it was practicable to raise her, the cost would have exceeded her value when raised.  Under such circumstances we are of opinion that the plaintiff's vessel did not come into collision with another vessel within the meaning of this word in the policies.

The case of *Richardson* v. *Burrows,* though not reported, is cited in Lowndes on Mar. Ins. § 196, in Spencer on Col. 14, and in *Cline* v. *Western Assur. Co.* 101 Va. 496.  The counsel for the plaintiff state in their brief that they have had an opportunity to examine a stenographic report of the case, and that it was an action to recover for a partial loss of wheat shipped on a small schooner, which sailed from Lynn in England for Caen in France.  During the night the vessel struck something which caused damage to the cargo.  What the object was did not appear, but it was probably some old sunken wreck, or possibly floating wreck.  After the evidence was in, Lord Coleridge inquired whether there were any cases of collision.  None were referred to.  Lord Coleridge ruled that he should hold that the word " collision " meant collision with another ship, and did not mean either a rock or a sand bank or floating wreck.  The jury were then discharged by consent, and judgment given for the defendant.  The case was decided December 16, 1880.  While this is a *nisi prius* decision, it is of some weight.  See also *Hough* v. *Head,* 54 L. J. (Q. B.) 294; *Reischer* v. *Borwick,* [1894] 2 Q. B. 548; *Cline* v. *Western Assur. Co.* 101 Va. 496; *The Bristol,* 10 Blatchf. C. C. 537.

We do not regard the case of *Chapman* v. *Fisher,* 20 Times Law Rep. 319, as applicable to this case.  It involved no discussion as to what is collision nor any adjudication thereon. The case of *Barr* v. *Gibson,* 3 M. & W. 390, relates to a bill of sale of a vessel on the shore.  It has no bearing on this case.

*Judgment in each case for the defendant.*