WESTERN TRANSIT CO. v. BROWN.

(District Court, S. D. New York. March 11, 1907.)

1. INSURANCE—MARINE INSURANCE—COLLISION.

The word "collision," as used in marine insurance, is no longer strictly limited to that fortuitous injurious contact of navigating vessels which is its obvious and natural signification.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1101.]

2. SAME—RUNNING-DOWN CLAUSE—WHAT CONSTITUTES COLLISION.

Where two vessels are under the same physical control, as in case of a tug with a tow alongside, so that an impulse given to the tug must necessarily be communicated to the tow, and negligence in the tug's navigation causes an injurious contact between the tow and a third vessel, for which the tug is held liable, she should be regarded as having been in collision within the meaning of the ordinary collision or running-down clause of a marine policy of insurance; but, if the control is only intellectually exercised, or if there is no control at all of one vessel over another, there can be no collision within the meaning of such clause without an actual injurious contact between the vessel insured and some other object.

3. SAME—FACTS CONSIDERED.

The running-down clause of a marine policy provided that, "if the ship hereby insured shall come into collision with any other ship or vessel or raft and the assured shall in consequence thereof become liable to pay and shall pay by way of damages to any other person or persons any sum, * * * we, the insurers, will pay." While running alongside of another vessel, having no connection with her, through the negligent navigation of both, the suction created by the insured vessel caused the other to sheer and come into collision with a third, and both were held liable in damages. Held, that the insured vessel was not in collision within the meaning of the policy, and not entitled to recover the damages so paid from the insurer.

In Admiralty. On exceptions to libel.

Harvey D. Goulder and Frank S. Masten, for libelant.
Wing, Putnam & Burlingham, for respondent.

HOUGH, District Judge. While the steamers Troy and E. P. Wilbur were running nearly alongside each other upon Lake St. Clair,

they approached the steamer Mariposa, pursuing an opposite and near-ly parallel course, and towing the barge Martha on a hawser. Through the concurrently negligent navigation of both Troy and Wilbur, the latter and smaller vessel fell within the suction influence of the Troy's propeller in such manner that there immediately followed a rank sheer on the Wilbur's part which caused or contributed to a serious collision between that steamer and the Martha. In the ensuing litigation both Troy and Wilbur were held responsible for the collision damage (Minnesota S. S. Co. v. Lehigh Valley Transportation Co., 129 Fed. 22, 63 C. C. A. 672), and this action is promoted by the owners of the Troy to recover from their underwriters the damages paid by them under the decision referred to.

It is agreed that the Troy was not in contact with any other vessel at the time of disaster; that she herself suffered no injury, was entirely independent of the Wilbur as to ownership, management, and navigation, and was held responsible solely because her negligence contributed to placing the Wilbur and Martha in a position which rendered collision inevitable. Neither is it denied that the word "collision," as used in marine insurance, can no longer be limited to that fortuitously injurious contact of navigating vessels which is its obvious and natural signification. Chandler v. Blogg, 1 Q. B. 32; London Assurance Co. v. Campanhia de Moagens, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113; Re Margetts, etc., Corporation, 2 K. B. 792; Cline v. Western Assurance Co., 101 Va. 496, 44 S. E. 700; Burnham v. China Insurance Co., 189 Mass. 101, 75 N. E. 74, 109 Am. St. Rep. 627; Newtown Creek, etc., Co. v. Ætna, etc., Co., 163 N. Y. 114, 57 N. E. 302; Wright v. Brown, 4 Ind. 95, 58 Am. Dec. 622. The underwriting in suit is an ordinary vessel policy with the running-down clause incorporated therein. The adventures and perils assumed by the insurers are "of the inland seas and waters, enemies, pirates, rovers, thieves, fires, explosions, collisions, jettisons, barratry of the master or mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of said vessel or any part thereof." The material words of the collision, or running-down, clause, declare:

"It is further agreed that if the ship hereby insured shall come into collision with any other ship or vessel or raft and the assured shall in consequence thereof become liable to pay, and shall pay by way of damages to any other person or persons any sum * * * we the insurers will pay," etc.

Libelants admit that collision damages paid by the insured are not a peril of either the high or inland seas, nor within the sue and labor clause; but they insist that upon the true construction of a policy drawn and proffered by the insurer such a running-down clause as the one here under consideration means that a vessel which causes a collision and is held liable for the same "comes into collision" within the meaning of the whole policy. To support this contention it is urged that the Troy's liability was established in a "cause of collision," and that she must be held to have "come into collision" because liable for collision damage in such a suit. This argument rests upon too loose a use of the word "collision," and relies on form rather than upon sub-

stance. By ellipsis certain admiralty litigations are called "collision cases," yet the gist of such actions is not the fact of collision, but the torts (maritime because of locus) from which the collisions result. The Troy was not liable because there was a collision, but because her navigators were guilty of a maritime tort; i. e., careless navigation.

No better statement of libelant's position can be made than was advanced by distinguished counsel for the plaintiffs in The Niobe, 7 Asp. Mar. Cas. 89. It there appeared that a collision had occurred between a tug towing the Niobe on a hawser and the Valetta. The tug was under the orders of the Niobe's navigators, and her owners, having been obliged to pay the Valetta's damages, sued their underwriters under a running-down clause in all material parts identical with the one at bar. Their counsel (then Sir Richard Webster) stated on behalf of the plaintiffs two grounds of recovery: First, that "if a ship is negligently maneuvered, so that in order to avoid a collision another ship is put in such a position that it sustains damage, this is damage from collision. The contract must be taken to have been made subject to this known liability, and it is too narrow a construction to restrict it to actual contact." And, second, "the tug is the servant of the ship and the tug and tow must be considered as one." Of the four judges who heard the cause Lord Morris certainly assented to the first proposition, and apparently also to the second. Lord Watson assented to the second and expressly dissented from the first, and the chancellor. in my opinion, agreed with Lord Watson. Lord Bramwell dissented in toto. The Niobe cannot be regarded as authority for any wider proposition than that under the law of England and the circumstances of that case the tug and tow were regarded as one vessel. It seems to me clear that, if two vessels be so united under a single control that an impulse carelessly or negligently given to the controlling craft must be communicated to the other, both may well be regarded as an entity for purposes of navigation. If such control be physical (as in the case of a tug with tow lashed alongside), and negligence of the tug's navigator produces injurious contact between the tow and third vessel. the tug may and should be regarded as having "come into collision," as truly as one man strikes another, whether he use for that purpose his fist or a club held in that fist.

But if the control be but intellectually exerted (as by flagship over flotilla), or if there be no control at all (as in this case), there can be no collision in the sense under consideration without an injurious contact between the vessel insured and some other object, just as no man could be said to strike another if by careless or inadvertent movement he caused the arm of a second person to hit a third, even though he were liable in tort for the resultant damage.

I do not think that the libelant's claim can be sustained either upon principle or authority, and it is directed that the exceptions be sustained, and the libel dismissed, with costs.