LESTER V. ALEXANDER AND SCHUMAN CARRIAGE COMPANY, LIMITED, A HAWAIIAN CORPORATION, *v.* HOME INSURANCE COMPANY OF HAWAII, LIMITED, A HAWAIIAN CORPORATION.

## No. 1451.

### SUBMISSION UPON AGREED FACTS.

ARGUED JUNE 4, 1923.                    DECIDED AUGUST 6, 1923.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

AUTOMOBILE INSURANCE—*construction of policy.*

   A policy of insurance is a contract. While in case of doubt or ambiguity its terms must be construed strictly against the insurer, in construing the meaning of words employed therein, such words, similarly as in the case of ordinary contracts, should be given their ordinary and popularly accepted meaning in the absence of anything to show that they were used in a different sense.

SAME—*same—collision clause.*

   An insurer is not liable to the insured under a collision clause in its policy indemnifying the insured against "direct loss or damage * * * caused by accidental collision * * * with any * * * object" where the damages to the automobile covered were caused by its capsizing or tipping over on to the road over which it was being operated upon the sudden application of its brakes.

### OPINION OF THE COURT BY PETERS, C. J.

The sole question involved upon this submission is the liability of the insurer under the "collision clause" of its

policy for damages occasioned an automobile insured by it which accidently capsized or tipped over on to the road over which it was being operated.

The accident to the automobile is admitted by the parties to have occurred under the following circumstances: "That on the 24th day of July, 1922, while said automobile was being operated by the said Lester V. Alexander" (one of the insured) " * * * along the government road * * * a horse suddenly dashed into the road in front of the car and in order to avoid a collision with the horse, the said Lester V. Alexander applied the brakes of the car which caused the car to capsize or tip over and thereafter came in violent contact with the ground at the side of the road sustaining damage to its body, machinery and equipment * * * ." We take it, in the absence of any statement to the contrary, that the "side of the road" refers to the traveled road or the side immediately adjoining the traveled road of the same general level as the traveled road.

The collision clause in the insurer's policy covered "accidental collision * * * with any other automobile, vehicle or object * * * ".

The insured contend that when the automobile came in violent contact with the ground at the side of the road a "collision" occurred between the automobile and the side of the road within the definition of that term as employed in the policy. On the other hand, the insurer contends that the facts do not come within the generally accepted meaning of the term "collision" as employed in automobile insurance and that the accident was a "tip-over", which is not covered by the "collision clause" contained in the policy. Webster's New International Dictionary defines "collision" as follows: "Act or instance of colliding; state of having collided; a violent meeting, as of railroad trains". The Century Dictionary gives the following definition of the word "collision": "The act of

striking or dashing together; a striking together of two bodies; the meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one; specifically, in recent use, the dashing together of two railroad-trains, or of two boats or ships."

Measured by a precise literal application of either of the definitions quoted to the facts involved it might be said from a lexicographical standpoint that when the automobile overturned and came in contact with the side of the road, the automobile came in "collision" with the side of the road. But the generally accepted meaning of the word "collision" and not the technical lexicographical definition controls.

A policy of insurance is a contract. While in case of doubt or ambiguity its terms must be construed strictly against the insurer, in construing the meaning of words employed therein, such words, similarly as in the case of ordinary contracts, should be given their ordinary and popularly accepted meaning in the absence of anything to show that they were used in a different sense. 13 C. J., title "Contracts", Sec. 489, p. 531; 26 C. J., title "Fire Insurance", Secs. 69 et seq., pp. 70 et seq.; 14 R. C. L., title "Insurance", Sec. 102, p. 925.

One describing the accident in the instant case would not refer to it as a "collision." The term "capsize" or "tip-over" as employed in the submission would be more reasonably descriptive of the accident. Were one to refer to an automobile as being "in collision" without giving further details, the mind of the auditor would naturally visualize an automobile coming in contact with some other vehicle or some perpendicular object obstructing the course of its progress. This thought is best illustrated, perhaps by the not uncommon accident to a pedestrian slipping and falling to the pavement. One would not say

that he collided with the pavement. A fall is not spoken of as a collision.

Indemnity against collision is common to marine insurance. The dictionary definitions quoted could readily be applied to the case of a ship in course of navigation coming in contact with a sunken abandoned hulk, wreckage, sand-bars or docks. And yet contact under such circumstances would not be a collision as that term is employed in marine insurance. The ordinarily accepted meaning of the word "collision" in connection with that branch of insurance contemplates the contact of two navigable vessels. In other words, the ordinarily accepted meaning of the word as used in connection with navigation controls. See *Burnham* v. *China Mutual Ins. Co.,* 189 Mass. 100.

Lord Coleridge is reported to have said in the unreported case of *Richardson* v. *Burroughs* decided by the court of Queen's Bench in 1880 and referred to in a note found in Vol. 32 of the A. & E. Ann. Cas., 1914 B, at page 849: "It means collision with another ship, and does not mean either dock, or sand bank, or floating wreck, or anything but the *ordinary meaning* in my judgment of collision". Likewise, in *Hough* v. *Head,* 54 L. J. Q. B. (Eng.) 294, set out in *Cline* v. *Western Assur. Co.,* 44 S. E. (Va.) 700, Grove, J., is quoted as saying: "I think that what happened did not amount to a collision. The vessel probably ran on to a bank, and this was not, as it seems to me, *a collision within the ordinary acceptation of that term* such as would be the case if a vessel struck another vessel or other navigable matter * * * ". The American authorities similarly attach to the term "collision" its ordinarily accepted meaning. See *Newtown Creek Towing Co.* v. *Aetna Ins. Co.,* 57 N. E. (N. Y.) 302; *Cline* v. *Western Assur. Co., supra; Burnham* v. *China Mutual Ins. Co., supra; London Assurance* v. *Companhia*

*De Moagens,* 167 U. S. 149; *Western Transit Co.* v. *Brown,* 152 Fed. 476.

The case upon which the insured most strongly rely is that of *Harris* v. *Am. Casualty Co.,* 83 N. J. L. 641. It was there held by a divided court that indemnity against "loss or damage resulting solely from collision with any moving or stationary object" covered the case of an automobile which crashed through the guard-rails of a bridge into the stream below, upon the theory that the words of the policy did not limit the meaning of the object with which the automobile should come into contact to a perpendicular one; that the word collision meant "colliding by striking together, violent contact"; that the stream was a "stationary" object; that the automobile and the stream came in contact and in the absence of any limitations in the policy, such contact constituted a collision. We can see no difference between the collision clause quoted in the *Harris* case and that involved in the instant case. Perhaps the word "stationary" influenced that court in coming to the conclusion to which it did. But to the extent that it holds that the dictionary definition and not the ordinarily accepted meaning of the word "collision" controls, we are unable to follow it as a guide in this case. We are inclined to the reasoning employed by the Wisconsin supreme court in the case of *Bell* v. *American Ins. Co.,* 181 N. W. 733, where it said:

"With the definitions of lexicographers as a basis, it is easy to demonstrate that the incident resulting in damage to plaintiff's automobile constituted a collision. Thus: 'A collision is the 'meeting and mutual striking or dashing of two or more moving bodies or of a moving body with a stationary one.' Century Dictionary. 'Object' is defined to be 'that which is put, or which may be regarded as put, in the way of some of the senses, something visible or tangible.' Webster's Dictionary. An automobile is an object. Upon the overturning of an automobile its for-

cible contact with the earth constitutes a 'mutual striking or dashing of a moving body with a stationary one.' Hence the forcible contact of the automobile with the earth on the occasion of the upset constituted a collision.'

"Upon its face this appears to be good logic, but the conclusion is neither convincing nor satisfying. One instinctively withholds assent to the result. The reason is that it makes a novel and unusual use and application of the word 'collision'. We do not speak of falling bodies as colliding with the earth. In common parlance the apple falls to the ground; it does not collide with the earth. So with all falling bodies. We speak of the descent as a fall, not a collision. In popular understanding a collision does not result, we think, from the force of gravity alone. Such an application of the term lacks the support of 'widespread and frequent usage'."

Upon reason and authority we believe that the term "collision" as employed in the policy in the instant case was used in its ordinary and popularly accepted meaning.

The case of *Bell* v. *American Ins. Co. supra,* was one to recover damages on an insurance policy insuring plaintiff against damage to his automobile "by being in accidental collision with any other automobile, vehicle or object." It appears from the facts stated in the opinion that while the insured was driving his automobile down a city street he turned into an intersecting avenue with the intention of backing out and turning around. Upon stopping to back out from the intersecting street one side of the car gradually settled into the ground and the car tipped over. The court held:

"It is a fundamental rule that the language of a contract is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance any more than to the language of any other contract. The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset or tip-over. If it were the purpose to insure against damage resulting

from such an incident, why should not such words, or words of similar import, have been used? We cannot presume that the parties to the contract intended that an upset should be construed as a collision in the absence of a closer association of the two incidents in popular understanding."

The *Bell* case is cited with approval in the case of *Southern Casualty Co.* v. *Johnson,* 207 Pac. (Ariz.) 987. The latter case is on all fours with the case at bar and holds that a tip-over is not a collision within the meaning of a collision clause in a policy of insurance identically the same as that under which the insured claim in the instant case.

We do not propose to formulate in advance a definition of the word "collision" applicable to all cases. We can do no better than emulate the example of the U. S. Supreme Court when it said: "It is impossible, as we think, to give a certain and definite meaning to the words 'in collision', or to so limit their meaning as to plainly describe in advance that which shall and that which shall not amount to a collision, within the meaning of this policy." See *London Assurance* v. *Companhia De Moagens, supra.* But we do not feel that the facts disclosed come within the ordinarily accepted meaning of the word "collision" as that term is used in automobile insurance, and particularly in the collision clause under which the insured claim. The accident was not a collision. If anything it was a "tip-over", a cause of damage not covered by the policy under consideration.

A judgment consistent with the foregoing opinion will be signed upon presentation.

*J. L. Coke* (also on the briefs) for plaintiffs.

*A. L. Castle* (*Robertson & Castle* on the brief) for defendant.