NEWTOWN CREEK TOWING COMPANY, Respondent, *v.* THE AETNA INSURANCE COMPANY, Appellant.

MARINE INSURANCE — MEANING OF TERM "COLLISION." Collision in modern marine parlance and within the meaning of the clause of a marine insurance policy insuring a vessel against "any accident caused by collision," although including its impact with floating and foreign objects, means a collision with such objects by mere chance or accident, and its owner cannot recover from an insurance company, under such provision of the policy, for injuries caused by a deliberate attempt to force it through a floe, or field, of ice, the resisting power of which had been miscalculated.

*Newtown Creek Towing Co.* v. *Ætna Ins. Co.*, 23 App. Div. 152, reversed.

(Argued April 2, 1900; decided May 15, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 3, 1898, reversing a judgment in favor of defendant entered upon a verdict directed by the court, and granting a new trial.

This action was brought to recover upon a policy of marine insurance indemnifying the plaintiff, the owner of a steam

tug, against loss and damage arising from, or growing out of, any accident caused by collision to any other vessel or vessels, their freight and cargoes (or each or any of them), for which said steam tug or its owners may be legally liable.

In February, 1894, during the life of the policy, a canal boat, while being towed by such steam tug through the midst of a floe of ice in New York harbor, was struck by a fragment thereof in such a manner as to make a hole in her bow, and she sank.

Further material facts are stated in the opinion.

*James K. Symmers* and *James Emerson Carpenter* for appellant. There is no ambiguity or uncertainty about the meaning of the word " collision " as used in policies of marine insurance. (1 Bouvier Law Dict. [15th ed.] 332; 1 Abb. Law Dict. 241; Op. Jacobsen's Sea Laws, 324–327; *The Moxey*, Abb. Adm. 73; *The Munroe*, L. R. [Prob. Div. 1893] 248; *U. M. Ins. Co.* v. *Borwick*, 11 Law Times Rep. 465; *Reischer* v. *Borwick*, L. R. [2 Q. B. D. 1894] 552; *Everard* v. *Kendall*, L. R. [5 C. P.] 428; *Chandler* v. *Blogg*, 14 Law Times Rep. 66; *Hough* v. *Head*, 54 L. J. [Q. B.] 294.) The court below erred in holding that in an admiralty and maritime sense the word " collision " is properly descriptive of the contact between a vessel and floating cakes of ice. (*Ins. Co.* v. *Dunham*, 11 Wall. 1; *The M. R. Brazos*, 10 Ben. 435; *The Rock Island Bridge*, 6 Wall. 213; *M. D. & H. Board* v. *Turner*, 69 Law Times Rep. [N. S.] 630; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6.) Assuming that the Appellate Division is right in holding that the word " collision," in a policy of marine insurance of the character of the one in question, is not to be restricted to collisions between vessels, the record does not show a contact that could be called a collision even in the broadest use of the term. (*The Rambler*, 66 Fed. Rep. 355.)

*Mark Ash* for respondent. The striking of a floe of ice by the canal boat was an accident caused by collision within the

terms of the policy, in accordance with the ordinary use of
language. (*London Assur. Co.* v. *C. di M. do B.*, 167 U. S.
149; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *The Moxey*,
1 Abb. Adm. 73; *Phila. Co.* v. *Phila. & H. DeG. Co.*, 23
How. [U. S.] 214; *The Granite State*, 3 Wall. 310; *The
Mahey*, 14 Wall. 204; *Atlee* v. *N. U. P. Co.*, 21 Wall. 389;
*The Virginia Ehrman*, 97 U. S. 309; *The Swan*, 3 Blatchf.
C. C. 285; *The M. R. Brazos*, 10 Ben. 435.) The practical
interpretation of the policy by the assured and insurer covered
the loss in dispute. (*Insurance Co.* v. *Dutcher*, 95 U. S.
269; *Woolsey* v. *Funke*, 121 N. Y. 87; *Sattler* v. *Hallock*,
160 N. Y. 291.)

Parker, Ch. J.  Counsel have accumulated between them
apparently, not only all the decisions, but all the text-book
learning as well, in this country and England on the subject
of collision as understood in marine parlance, without discover-
ing that such a case as this has ever been brought to the atten-
tion of a court.  Obviously the reason is either that no other
vessel was ever injured under similar circumstances, or it has
not been supposed hitherto that the insurance of vessels against
"any accident caused by collision" included injuries sustained
by a vessel as the outcome of its crashing into another object
by the design of the master.  Unquestionably the injured
may recover where the collision is due to the design of the
master of another vessel or floating object, but when the master
of the vessel insured designedly takes the chance of running
into a perfectly apparent obstruction, although with the hope
and expectation that the vessel will successfully meet the
encounter, the contact is not a collision within the meaning of
the term as employed in this contract.  Collision, in its strict
nautical and legal acceptation, originally meant the impinging
upon one another of vessels while being navigated, but in
course of time and by common usage the application of the
term has been so far extended, in this country at least, as to
include the impact of a vessel with other floating objects.
Lord Coleridge held in *Richardson* v. *Burrows* (Q. B., 16th

December, 1880), not reported but referred to and quoted in Lowndes on Marine Insurance (Second ed., page 198, note S), that the striking of a ship on a field of ice was not a collision within the meaning of the term in a policy of insurance; but it may well be that his definition of the word was too narrow, measured by the tendency of our courts to broaden its application. However, whether the term be treated by the courts as so fixed in character as to be restricted in its meaning to the coming together of two vessels, as is the rule in France, or so flexible as to include a variety of floating objects other than vessels, the idea of accident so far as the insured is concerned underlies it. To illustrate: If a ferryboat crossing the Hudson river in the night time should unexpectedly strike a large floating cake of ice it may well be that the state of the law in this country would justify the holding that the striking constituted a collision within the meaning of the term as used in this policy. But it would be otherwise if, after the river had been closed for months by ice, the owner of the boat should conclude that the ice had been so far weakened by the rays of the sun that the boat could break its way through, and the result of the attempt should be an injury to the boat. No adjudication can be found holding that contact between the ice and boat under such circumstances would constitute a collision within the meaning of the term as it is employed in this contract. The injury in such case would be due not to an unintended contact with a floating, foreign substance, but to a deliberate attempt to break through a known barrier, the resisting power of which had been miscalculated.

Emerigon, in his work on Insurance (Meredith), states the rule as follows:

"1. When a vessel on which I have effected insurance has been damaged by collision with another vessel, or by an anchor or by a stake or net or such like, the insurers are bound to indemnify me for the damage suffered, if the action has happened through *mere chance* (*cas fortuit*).

"2. So, if the accident has happened *through the fault* of the master of another vessel; in which case I must assign to

the insurers my right of action against the author of the damage." (Chapt. 12, sect. 14, page 336.)

This rule we conceive to be correct, and applying it to the facts of this case we find that the accident did not happen by *mere chance*, such as would have been the case had the vessel come in contact unexpectedly with a floating cake of ice, but was the outcome of an attempt to force the boat through an ice field under such circumstances as led the Federal court to hold that the owner of the tug having this boat in charge was liable for the damages sustained by the owner of the boat sunk. (66 Fed. Rep. 355.)

This record discloses that but one witness testified to the circumstances attending the injury and sinking of the boat. In describing the ice floe through which the boat was shoved by the tug, he said: "The river was covered; I cannot say how big a floe, but the ice was scattered all over the river. The cakes varied in size. I don't know exactly the size of the cake that struck the *McMahon;* I came down through them; my tug went through them; the tug was in motion at that time. * * * The ice was all around me; all sides of me; ahead of me and behind me when this one hurt her." It seems he did not use the tugboat to break through the ice towing the *McMahon* behind, but instead lashed the *McMahon* on the starboard side of the tugboat so that she projected some forty-five or fifty feet in front of the tug, and with the boat in this position the effort was made to force it through the field of ice cakes. The learned trial judge asked the witness: "Q. Do you ever stop for ice in the harbor? A. Yes, sir. Q. Then you do not always tow when there is ice; sometimes you stop? A. Yes, sir. Q. Why do you stop? A. If we find the ice too heavy or dangerous then we stop. Q. Was the ice so dangerous on this occasion that you should stop? A. Well, I couldn't see." This was the last bit of testimony given, and the trial court promptly and properly, as we think, dismissed the complaint; properly, because the testimony showed that the master of the tugboat, heedless of the risk incident to an attempt to take a tow through the ice when it

was "too heavy or dangerous," took the chances of forcing the *McMahon* through in the night time, when he could not see, with full knowledge that the ice was all around the boat, ahead of it and behind it, and as the injury came while the boat was being thus rammed through the ice, it was not caused by a collision within the meaning of the contract in suit.

The order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs.

GRAY, O'BRIEN, HAIGHT, LANDON and WERNER, JJ., concur; CULLEN, J., not sitting.

Order reversed, etc. _____