DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

### JUNE TERM, 1912.

HOWARD G. HARRIS, PLAINTIFF AND PLAINTIFF IN
ERROR, v. AMERICAN CASUALTY COMPANY OF READ-
ING, PENNSYLVANIA, DEFENDANT AND DEFENDANT
IN ERROR.

Argued July 8, 1912—Decided November 18, 1912.

1. Collision means the act of colliding, and imports striking to-
gether; violent contact. Both bodies need not be in motion.
2. Water and land are "objects," and an automobile which runs
into either or both collides with an object or objects.
3. It is a familiar rule that if a policy of insurance be susceptible
of two meanings, that construction is to be adopted which is
most favorable to the insured. Conditions and stipulations in
such a policy are to be construed most strongly against the
insurer.
4. A provision in an insurance policy that damages to an auto-
mobile, resulting from collision due wholly or in part to upsets,
shall be excluded, does not operate to defeat recovery where an
automobile ran off a highway bridge, was precipitated into the
water below and landed at the bottom of the stream upside down—
the collision not being due to the upset—the upset being rather
the result of the collision. When the car ran off the bridge

dynamic force and gravitation determined the position in which it would strike first the water and then the bed of the stream; its final position being merely incidental to collision with the water and the land.

On error to the Supreme Court, Atlantic Circuit.

For the plaintiff in error, *Wilson & Carr.*

For the defendant in error, *John H. Backes.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The writ of error in this case brings under review the propriety of the direction of a verdict for the defendant in the Atlantic Circuit, where the issue between the parties was tried before a jury.

The plaintiff in error was the owner of an automobile which was being driven by his chauffeur over a bridge on the highway between Atlantic City and Pleasantville. The sides of the bridge were protected by guard rails made of posts and planking. The car crashed through the rail on one side and was precipitated into the stream below. The machine turned upside down after leaving the bridge and rested in an inverted position on the bed of the stream. By agreement of counsel it was stipulated that the liability of the defendant insurance company, if any, was the sum of $1,200. There were no disputed facts, and the question turned upon the construction of the contract of indemnity by which the plaintiff was insured by the defendant company. The policy was one insuring the plaintiff against loss and expense or both arising from ownership, maintenance or use of an automobile, with an endorsement on the policy insuring against damage resulting from an automobile collision, which endorsement, so far as pertinent, reads as follows:

"In consideration of an additional premium of seventy-five dollars ($75.00) this policy, subject to all its provisions and conditions, is hereby extended to include

"Loss or damage to any automobile (including equipment) enumerated and described in the warranties, resulting

solely from collision with any moving or stationary object; (excluding however) * * * (c) damage resulting from collision due wholly or in part to upsets."

At the conclusion of the case each side moved for the direction of a verdict; the plaintiff, because the car collided with a moving and a stationary object, namely, the water and the earth under the water at the point where it ran off the bridge, and the defendant, because the moving water and stationary earth beneath, with which the machine came in contact, were not moving and stationary objects contemplated in the policy, and because, further, the machine upset and the company was not, under the terms of the policy, liable for damages caused by an upset.

The learned trial judge observed that he was unable to conclude that the damage to the plaintiff's automobile was the result of a collision with a moving or stationary object within the meaning of the policy, and therefore directed a verdict for the defendant; whereupon the plaintiff prayed an exception, which was granted and sealed accordingly.

Counsel for the defendant in error argues that there was no injury occasioned by reason of the collision of the automobile with the guard rail on the bridge; that whatever injury occurred was sustained by immersion and contact with the bed of the stream, and that the plaintiff's counsel at the trial disaffirmed any right of recovery on account of the collision with the guard rail. An inspection of the record does not show that the plaintiff's counsel unequivocally committed himself to that position. True, in arguing against defendant's motion for the direction of a verdict the plaintiff's counsel remarked that the guard rail was not a factor except so far as it may have retarded the accident, but was not a factor in causing the accident, so that the situation was as though the machine had fallen off an unguarded roadway. Prior, however, to the motion for direction of a verdict, counsel for the plaintiff was asked by the court if he made any claim for damage by reason of the contact or collision with the rail, and he answered there would be some incidental damage that the car in colliding with the

rail probably suffered, breaking lamps and so on, but that the question of damage was fixed at $1,200, and if they were entitled to anything it was $1,200, so he did not think it necessary to prove damages in any way. This was consistent with the declaration which counts for an injury occasioned by the automobile being brought into collision with the guard rail of the bridge as well as by collision with a certain moving object, namely, the water of the stream below, and a certain stationary object, namely, the bed of the stream below the water.

It might well be decided upon this state of facts that the collision with the guard rail occasioned at least nominal damages, and that, as the parties had stipulated that if there were damages they should be assessed at $1,200, the judgment should be reversed and a *venire de novo* awarded; but this question is not decided as the same result is reached upon other grounds, which will shortly be stated.

As there could have been no collision without the presence of an object with which to collide, we will first consider whether the water of the stream and the earth beneath it were objects within the meaning of the policy. The Standard Dictionary defines "object" as "anything which comes within the cognizance or scrutiny of the senses; especially anything tangible or visible. * * * Anything, whether concrete or abstract, real or imaginary, that may be perceived or apprehended by the mind; that of which the understanding has knowledge." Water and land, therefore, are objects—physical objects. They are not abstract or imaginary, but tangible; visible, concrete and real, and may be perceived and apprehended by the mind; the understanding has knowledge of them.

"Collision" means the act of colliding; a striking together; violent contact. See Standard Dictionary.

The Supreme Court of the United States in *London Assurance Co. v. Companhia De Moagens Do Barreiro*, 167 *U. S.* 149, speaking to the subject of collision in admiralty law, said:

"As to the first, we think that the vessel was 'in collision' within the meaning of the language used in the certificate which represented and took the place of the policy. It was not necessary that the vessel should itself be in motion at the time of the collision. If while anchored in the harbor a vessel is run into by another vessel, it would certainly be said that the two vessels had been in collision, although one was at anchorage and the other was in motion. * * *

"It is impossible, as we think, to give a certain and definite meaning to the words 'in collision,' or to so limit their meaning as to plainly describe in advance that which shall and that which shall not amount to a collision, within the meaning of this policy."

Equally so with reference to any other form of policy. Just as certainly so with reference to an automobile insurance policy.

Both bodies need not be in motion, but if both had to be moving in order that there be a collision ordinarily, it would not be so in this case, for, by the very terms of the policy sued on the plaintiff is entitled to recover damages resulting solely from collision with any moving or *stationary* object. Therefore, he is entitled to damages (stipulated as to amount), unless within the meaning of the policy the moving or stationary object must be perpendicular instead of horizontal. There are no words in the policy which limit the meaning of the object to a perpendicular one.

Suppose a person driving an automobile along a road comes to a place where a highway bridge over a chasm had fallen away, and the machine be precipitated to the ground below, can it be said that there could be no recovery under such a policy as is here sued on because the damage to the machine was caused by collision with the flat earth instead of some upright or perpendicular object on the earth? We think not. To hold that there could be no recovery under such circumstances would be to misconstrue terms of a contract concerning which there is no room for construction, because the meaning is perfectly plain.

Again, suppose an automobile ran off a bridge over a stream and one of the rear wheels caught on an upright and the car hung suspended in the water and was considerably damaged by the flow of the water, can it be asserted that no compensation could be recovered for that damage under the terms of a policy such as sued on, because forsooth, the car did not collide with a moving object? Water is certainly an "object," and it "moves," and the policy undertakes to insure against damage occasioned by collision with a moving object. The liability, it seems, would be within the express terms of the policy. But, assuming that there is such ambiguity in the terms of the policy that would make it at least doubtful as to whether collision with water and land, horizontal objects, was within the terms of the policy, still, it is a familiar rule that the words used in a policy of insurance should be interpreted most strongly against the insurer where the policy is so framed as to leave room for two constructions. *Liverpool, &c., Insurance Co.* v. *Kearney,* 180 *U. S.* 132.

Therefore, if there be any doubt as to whether moving water or the surface of the land under it, being horizontal objects, are within the terms of the policy, which doubt is not conceded to exist, still the law governing the construction of the sort of contract under consideration comes in aid of the plaintiff's contention, and makes the defendant's liability plain.

It remains only to discuss the question of "upset," defendant's counsel contending that damages due to that cause not being recoverable within the terms of the policy, the direction of a verdict for defendant was right.

It is true that it is provided in the endorsement insuring against damage resulting from collision that "damage resulting from collision due wholly or in part to upsets," shall be excluded. But it cannot be said that the collision of the plaintiff's automobile with the water and land under the water was caused by an upset. It may be that the car upset by reason of contact with the water or the earth, but the collision was not due to an upset—the upset may have been

the result of the collision. The provision in the policy cannot mean that where collision has first taken place, there can be no recovery because, as the result of the collision, the machine is upset. When the car ran off the bridge dynamic force and gravitation determined the position in which it would strike first the water and then the bed of the stream. Its final position was merely incidental to the collision.

The above views lead to a reversal of the judgment of the Circuit Court, and to the reward of a *venire de novo.*

*For affirmance*—VREDENBURGH, J.   1.

