JACOB FELDMAN et al., Respondents, *v.* OLD DOMINION STEAMSHIP COMPANY and BROOKLYN EASTERN DISTRICT TERMINAL, Appellants.

(Supreme Court, Appellate Term, First Department, May, 1919.)

Ships and shipping — carriers — bills of lading — non-delivery of goods — negligence — evidence — meaning of " peril of the sea " — burden of proof.

In an action by the consignee of goods against the carrier for breach of contract resulting from their loss, proof of non-delivery makes a *prima facie* case against the carrier.

At the time goods consigned to plaintiffs were delivered to one of the defendants and transferred by it to the other defendant, a steamship company, the shippers received a bill of lading

*ʄ*

of the company whereby it agreed to carry the goods to their place of delivery subject to the condition that it should not be liable "for any loss or damage resulting from the perils of the lake, sea or other waters  *  *  *  or from collision, stranding or other accidents of navigation." The goods were put on a lighter of the defendant terminal company, which was moved to a pier of the steamship company where it sank at about midnight the day after and the goods became a total loss. Upon reversing a judgment in favor of the consignee in an action for breach of the contract to carry, and ordering a new trial, *held*, that proof of the non-delivery of the goods to plaintiff made out a *prima facie* case of negligence, at least against the steamship company.

As it did not appear how the accident occurred and since there was no employee of the defendant on the lighter when it sank and it was not shown that any one saw the accident, a determination as to the cause thereof must rest upon fair inferences.

The fact that after the accident the only damage to the lighter was a hole eighteen inches long and two feet from the bottom, and that otherwise she was in fair condition, justifies an inference that the lighter sank because of said hole, and the fact that it was on her starboard side facing the open slip and that the planks protruded inward necessarily led to the inference that the damage was caused by the lighter being struck with force by some object floating in the slip, and since she was tied to the dock, such object must have had some momentum.

The accident which was due to the impact against the lighter of some moving object floating in the slip, constituted a "collision" or a "peril of the sea" within the meaning of the bill of lading.

The defendants having shown affirmatively the care they took to make the vessel seaworthy and that the loss of the goods occurred through a cause embraced in one of the exceptions in the bill of lading the burden of proof was shifted to plaintiffs to show that the loss was attributable to the carrier's negligence and having failed to sustain such burden of proof the complaint should have been dismissed.

APPEAL by defendants from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, in favor of the plaintiffs against both defendants for $330.

Parsons, Closson & McIlvaine (Edward C. Sperry and H. B. Closson, of counsel), for appellants.

William A. Hyman (Elias R. Jacobs, of counsel), for respondents.

LEHMAN, J. The plaintiffs herein have recovered a judgment in an action brought by them for the loss of goods delivered to the Brooklyn Eastern District Terminal and transferred by it to the Old Dominion Steamship Company and consigned to the plaintiffs. At the time of the delivery of the goods the shippers received a bill of lading of the Old Dominion Steamship Company whereby that company agreed to carry the goods to their place of delivery subject, however, to certain conditions on the back of the bill of lading. Among these conditions there was a provision that the carrier shall not be liable " for any loss or damage resulting from the perils of the lake, sea or other waters  *  *  *  or from collision, stranding or other accidents of navigation." The plaintiffs served no complaint but on the summons appears the following indorsement:  " The nature and substance of the cause of action herein is action for breach of contract resulting in loss of goods," and the plaintiffs filed a bill of particulars in which they allege that the goods were placed on lighter No. 2 of the Brooklyn Eastern District Terminal and " that thereafter and about midnight of January 21, 1917, said lighter which was not unloaded, sank and the aforesaid goods and chattels became a total loss; that said goods were never delivered to the plaintiffs and the plaintiffs never received same." At the trial the plaintiffs introduced in evidence a stipulation whereby it was conceded that the goods " were delivered to the Brooklyn Eastern District Terminal as agent for the Old Dominion

Appellate Term, First Department, May, 1919.  [Vol. 107.

Steamship Company at the Terminal's dock in Brooklyn, N. Y., on January 19, 1917, by Edward J. Broderick of New York city, the shipper.  They were consigned to J. Feldman & Sons at Salisbury, N. C.  The said five bales of goods were on the same day loaded in lighter No. 2 belonging to the defendant Brooklyn Eastern District Terminal.  On January 20, 1917, the said lighter, containing the said five bales together with other freight, was transferred to the Old Dominion Steamship Company's pier No. 25 North river, New York city.  Plaintiff's goods were never delivered by the defendants to the plaintiffs.  The value of the plaintiffs' goods lost as aforesaid was $302.''  Upon this concession the plaintiffs rested.

There can be no doubt that the proof that goods were delivered to the Old Dominion Steamship Company for delivery to the plaintiffs and that the goods were never delivered to the plaintiffs, makes out a *prima facie* case at least against the Old Dominion Steamship Company.  It is urged, however, that since the Brooklyn Eastern District Terminal received the goods merely as agent for the Old Dominion Steamship Company, no cause of action is made out against the agent.  Inasmuch, however, as that defendant made no motion to dismiss the complaint, we need not now consider that question.

The defendants thereafter showed by the captain of a tug boat that he had moved lighter No. 2 on January twentieth to the north side of pier No. 25 and fastened it to the pier and that his tug boat did not collide with or injure the lighter.  They then showed by the master of another tug boat that at twenty minutes before one on the morning of January twenty-first, he saw the same lighter in the same position with the starboard side of the lighter toward the open slip on the north side of the pier.  At twenty minutes past

one on the same day, he started to back his tug boat out and then saw lighter No. 2 at an angle of about fifteen to twenty degrees, with the bow out. He immediately notified the superintendent that the boat was sinking. They then showed by the boat inspector and boss carpenter of the Brooklyn Eastern District Terminal that on January ninth he inspected the lighter and that it was then in fair condition. Upon cross-examination he stated that he examined the boat after it was repaired and that after the accident there was a hole about two feet from the bottom of the vessel, underneath the railing or wearing-strip. They then showed by the superintendent of maintenance of the Brooklyn Eastern District Terminal that he saw the lighter on January twenty-first. She was then " listed to the port side and in charge of wreckers who were recovering the cargo from her." On the next day he saw her in dry dock and examined her. At that time he found a plank broken on the starboard side about eighteen inches to two feet from the bottom of the vessel. The hole was about eighteen inches long and about six inches wide. The plank was made of sound timber and the boards protruded inward " that is, they appear to have been struck from the outside; pushed in from the outside." On cross-examination he stated that when he first saw the lighter " the wrecking crew were patching up in order that the lighter could be raised, pumped out and floated. It was in the sling of the derrick. The derrick had raised it and was helping the barge to float." The defendants further showed that the accident could not have been due to any tug boat owned or operated by them. The plaintiffs produced no testimony in rebuttal and the trial judge thereafter gave judgment in favor of the plaintiffs.

The defendants claim that the testimony produced

15

by them shows that the plaintiffs' goods were lost through the perils of navigation or a collision within the meaning of the exception contained in the bill of lading, and that after they had proved these facts the burden of producing evidence to show that the accident was due to some negligence on the part of the defendants shifted to the plaintiffs. The plaintiffs, on the other hand, claim that there is no proof in the case that the lighter sank and the goods were lost, but on the contrary that the evidence shows that the boat merely listed and that the cargo was not a total loss. Their main contention, however, is that the defendants did not show that the loss was occasioned by any collision or even if there was a collision that the defendants were required, in order to meet the plaintiffs' claim, to show how the accident occurred and that they were free from any negligence which occasioned the accident.

The contention made by the plaintiffs that there was no proof that the lighter sank and that the goods were thereby lost should not be considered by this court. As shown above, they allege in their own bill of particulars that the lighter sank and the aforesaid goods became a total loss and the defendants could properly rely upon this statement of the plaintiffs without further proof on their part. Possibly if the evidence produced at the trial showed conclusively that the boat had *not* sunk and that the goods were *not* lost, the trial justice would not have been bound to consider this evidence even though it contradicted the statements in the bill of particulars. The evidence, however, is not inconsistent with the statement contained in the plaintiffs' bill of particulars. The only witness who testified that the boat listed, saw the boat at the time when it was apparently sinking. The other witness who testified to the position of the

lighter saw it after it was in the sling of the derrick which was raising it and it is quite possible that after the first witness had seen the lighter, it had sunk and been raised before the second witness saw it and the other evidence introduced without objection seems to bear out such an inference. It is true that one witness testified that the wreckers were recovering part of the cargo but that testimony certainly does not show that the *plaintiffs'* goods were not lost and the stipulation introduced in evidence by the plaintiffs states that "the value of the plaintiffs' goods *lost* as aforesaid was $302."

The evidence does not show exactly how the accident occurred and since there was no employee of the defendant on the lighter at that time and it is not shown that any person saw the accident, a determination of the cause of the accident must rest upon fair inferences to be drawn from the testimony. The fact that after the accident the only injury that was found on the boat was a hole eighteen inches long and two feet from the bottom of the boat and that otherwise the boat was in fair condition, leads fairly to the inference that the lighter sank by reason of this hole. The fact that this hole was on the starboard side of the boat which was facing the open slip and that the boards protruded inward, leads necessarily to the inference that the injury was caused by the boat being struck with some force by some object floating in the slip, and since the lighter was itself tied to the dock, the object which struck the lighter with sufficient force to break a sound plank and cause the ends to protrude inside, must have had some momentum. It seems to me that under these circumstances it can hardly be disputed that the accident was due to the impact against the lighter of some moving object floating in the slip, and within all the authorities this constitutes

a collision or a peril of the sea within the meaning of the bill of lading. See *Newtown Creek Towing Co.* v. *Ætna Ins. Co.*, 23 App. Div. 152; 163 N. Y. 114; *Reybold* v. *United States*, 15 Wall. 202. I cannot find that any possible inference can be drawn from any of the surrounding circumstances, that any negligence of the defendants contributed to this accident; but on the other hand, since there is no evidence to show exactly how the " collision " occurred, it is, nevertheless, possible that in some undisclosed respect the defendants may have been guilty of negligence. The question therefore arises whether after the defendants had shown that the accident was due to one of the causes for which, under the terms of the contract, they were expressly exempted from liability, the defendants were bound to go further and show that they were free from any negligence which contributed to the accident. This point, in my opinion, has been so clearly passed upon by the Supreme Court of the United States that it is no longer open to question and the authorities cited by the plaintiffs not only do not bear out their contention but point plainly to the rule that after the damage to the goods has been established the burden lies upon the carrier to show that it was occasioned by one of the perils from which it was exempted by the bill of lading; but that after this is shown, the burden is upon the plaintiff to establish the carrier's negligence, " as the affirmative lies upon him." See *Clark* v. *Barnwell*, 12 How. 272; *Transportation Co.* v. *Downer,* 11 Wall. 129; *Cau* v. *Texas & Pacific R. Co.*, 194 U. S. 427, which cites both the earlier cases with approval. Practically all the cases which the plaintiffs cite are cases where there was no evidence that the accident occurred through any cause for which, under the terms of the bill of lading, the carrier was exempted from liability, and in such

cases of course the burden is upon the carrier to explain how the loss occurred and to show that it was free from negligence.   In other cases cited by the respondents the accident occurred under circumstances which in themselves raise a presumption of negligence and require the defendant to produce evidence to rebut that presumption; even if the plaintiff has the burden of showing that the loss occurred through the defendants' negligence.

It may be contended that under the provision of the Harter Act (27 U. S. Stat. 445), a carrier by sea cannot, by provisions inserted in the bill of lading, exempt himself from liability for negligence or change the ordinary rule that where goods in the carrier's possession are lost, the carrier has the burden of showing that they were not lost through its negligence.   I cannot, however, find anything in the act that can properly lead to such conclusion or any authority to sustain it.   It is true that in the case of *The Southwark,* 191 U. S. 1, the Supreme Court of the United States held that even where the bill of lading expressly provided that " the goods shipped hereunder are absolutely at the risk of the owners in every respect, and that the carrier is responsible for no loss, delay or damage thereto, however arising, including stowage, and all risks of breakdown or injury, however caused, whether to its refrigerator or its machinery, even though arising from defect existing at or previous to the commencement of the voyage,'' such provision cannot be given the effect of placing upon the shipper the burden of proving that the carrier was negligent, where it is shown that the goods were lost by reason of the fact that the refrigerating apparatus was out of repair at the time of sailing.   The court, however, placed its decision expressly upon the ground that if the refrigerating apparatus was not in

proper condition, the boat was not seaworthy. While the Harter Act by section 3 relieves the carrier from liability in certain respects, it does so only upon the condition that the owner " shall exercise due diligence to make the vessel seaworthy in all respects and properly manned, equipped and supplied; " and it also provides in section 2 that " it shall be unlawful for any vessel transporting property or merchandise from or between ports of the United States and foreign ports, her owner, master, agent, or manager to insert in any bills of lading or shipping documents any covenant or agreement whereby the obligation of owner to use due diligence to properly equip, man, provision and outfit said vessel, and to make the vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened or avoided."

The court there held that the provision in the bill of lading was an attempt to weaken the obligation of the owner to exercise due diligence to make the ship seaworthy and could therefore be given no effect if the loss occurred through unseaworthiness. The Harter Act did not, however, provide expressly or impliedly that the owner could not in other respects contract to limit his liability. In the present case the defendants have shown affirmatively the care they took to make the vessel seaworthy and in other respects their liability may be determined by the provisions of the contract. They have shown that the loss of the goods occurred through a cause embraced in one of the exceptions in the bill of lading and thereafter the burden has shifted to the plaintiffs to show that the loss occurred through the carrier's negli-

gence.   Since it has failed to do so, the complaint should have been dismissed.

The judgment is therefore reversed and a new trial ordered, with thirty dollars costs to appellants to abide the event.

WEEKS and FINCH, JJ., concur.

Judgment reversed and new trial ordered, with thirty dollars costs to appellants to abide event.