## NATIONAL FIRE INS. CO. OF HARTFORD, CONN., v. ELLIOTT.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1925.)

No. 6697.

**1. Insurance ⟲146(1) — Entire context and subject-matter considered in determining meaning and application of specific words and expressions.**

Entire context and subject-matter of contract of insurance will be considered in determining meaning and application of specific words and expressions.

**2. Insurance ⟲146(2) — Words and expressions not always given their most usual application.**

Courts will not always give to words and expressions of insurance contracts their most usual application, for to do so would necessarily be to adopt a restricted application.

**3. Insurance ⟲424—Transportation clause in automobile insurance policy held to contemplate collision of conveyance on which automobile was being carried.**

Fire and transportation automobile policy, insuring against perils while automobile was "being transported in any conveyance by land or water, the stranding, sinking, collision, burning, or derailment of such conveyance * * *" held to contemplate collision of conveyance on which automobile was being carried, and insurer liable, regardless of cause of collision.

**4. Insurance ⟲424—Collision of elevator carrying automobile with bottom of shaft held "collision," within policy.**

Where fire and transportation automobile policy insured against perils of collision of conveyance used to transport automobile, when automobile was being lowered from second floor of storage room to ground floor, and elevator dropped and struck bottom of shaft, and automobile was bent, broken, and twisted, there was "collision" of elevator with bottom of shaft, within meaning of policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Collision.]

**5. Appeal and error ⟲747(1) — Cross-errors not assignable in federal court.**

Cross-errors are not assignable in the federal court.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by Mrs. A. J. Elliott against the National Fire Insurance Company of Hartford, Conn. Judgment for plaintiff, and defendant brings error. Affirmed.

Murat Boyle, of Kansas City, Mo. (William S. Hogsett, of Kansas City, Mo., on the brief), for plaintiff in error.

Fred A. Boxley, of Kansas City, Mo., for defendant in error.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. This is an action at law upon a policy of insurance issued by plaintiff in error, defendant below, covering the automobile of the defendant in error, plaintiff below. The cause was tried upon a stipulation of facts and the testimony of certain witnesses, and the trial court directed the jury to find a verdict in favor of the plaintiff, but submitted to the jury the question of the amount of damage. The jury returned a verdict in favor of the plaintiff in the sum of $2,387, and judgment was rendered thereon.

The defendant below brings the case here

on writ of error and has formally assigned nine separate errors. The nine assignments of error, however, in their last analysis, present but two questions, and they are whether either the "transportation clause" or the "collision clause" of the policy cover the contingency out of which the damage to the automobile was sustained.

The policy is designated as a "fire and transportation automobile policy," with a collision clause attached. Under the transportation clause in the policy, the plaintiff is insured "against direct loss or damage, from the perils insured against, to the body, machinery, and equipment of the automobile described herein, while within the limits of the United States (exclusive of Alaska, the Hawaiian and Philippine Islands, and Porto Rico) and Canada, including while in building, on road, on railroad car or other conveyance, ferry or inland steamer, or coastwise steamer between ports within said limits. The following are the perils insured against: (a) Fire, arising from any cause whatsoever, and lightning; (b) while being transported in any conveyance by land or water, the stranding, sinking collision, burning or derailment of such conveyance. * * * *"

Under the collision clause the policy is extended to cover damage to the automobile and equipment "by being in accidental collision during the period insured with any other automobile, vehicle, or object. * * * *" At the trial, after the introduction in evidence of the policy, plaintiff and defendant entered into and agreed to a stipulation of facts by which plaintiff in error admitted the issuance of the policy, the payment of the premium, the waiver of proofs of loss, and the performance by the defendant in error of all conditions precedent or subsequent. The stipulation further provided:

"That at the time said policy was written, and at the time of the damage thereto, plaintiff kept said automobile in a public garage located at Thirty-Fifth street and Broadway, in Kansas City, Mo., said garage being known as "Woodlea Garage"; that said garage is a three-story building, with a basement, and the automobiles stored therein are transported from floor to floor by means of an electric elevator; that it was the custom of plaintiff to drive said automobile into said garage when through with its use, and that said garage stored same on the second floor thereof; that, when desiring to use said automobile, plaintiff was accustomed to notify the operators of said garage, who would cause said automobile to be brought from the second floor to the first floor; that on the 13th day of July, 1922, plaintiff ordered her said automobile, being the automobile described in said policy of insurance, for the purpose of a pleasure call; that an employee of said garage drove said automobile onto the elevator on the second floor of said garage building and started the descent of said elevator and said automobile, intending to stop at the first floor, but when midway between the second floor and the first floor of said garage the cables, supports, and apparatus holding and controlling said elevator collapsed and broke, so that said elevator with said automobile upon it dropped with great speed a distance of about 21 feet to the basement floor or bottom of the elevator shaft, the elevator (with said automobile on it) striking the bottom of said shaft with great violence; that said automobile weighed in excess of 4,000 pounds, and by reason of the violent contact of the elevator (said automobile being thereon) with the bottom of said elevator shaft said automobile of plaintiff was bent, twisted, and broken so that the value of the salvage remaining was $300."

Counsel for plaintiff in error, in arguing the case, lays down two propositions: (1) "The damage to plaintiff's car did not result from a peril insured against under the transportation clause of the policy;" and (2) "the damage sustained by the assured to the automobile is not covered under the collision clause in the policy."

Preliminary to addressing themselves to the above questions, counsel have laid down and discussed certain principles which it is contended should guide the court in its interpretation of the language of the policy. Counsel say: "In construing a written contract, the words employed will be given their ordinary and popularly accepted meaning, in the absence of anything to show they were used in a different sense," citing 13 C. J. 531.

Counsel further say: "As a corollary to the above proposition, we desire to emphasize the rule that an insurance contract is to be construed in the same manner and according to the same fundamental rules as any other contract."

Supporting these preliminary observations, counsel say: "In the case of Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 463, 14 S. Ct. 379, 381 (38 L. Ed. 231), it was said: 'But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which

the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' The above quotation has been many times cited by this court, notably in Standard Life & Accident Insurance Co. v. McNulty, 157 F. 224, 85 C. C. A. 22; McGlother v. Provident Mutual Accident Co., 89 F. 685, 32 C. C. A. 318; Hawkeye Commercial Men's Association v. Christy (C. C. A.) 294 F. 208."

Other cases are cited and quoted to the same effect. And again counsel say: "In the case of Hawkeye Commercial Men's Association v. Christy, 294 F. 208, 210, this court, in referring to the decision of the Supreme Court in Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231, said in that case: 'The Supreme Court * * * sharply called a halt to the tendency at that time to treat contracts of insurance as a separate class, to be interpreted by the rule that, if the meaning of the contract were doubtful, the construction should be adopted which was most favorable to the assured, and to be assiduous to discover such a doubt.' "

[1, 2] We have no disposition to combat the principles of law stated and quoted by counsel for plaintiff in error. We accept these principles as fundamental and well settled. It does not follow, however, that courts will refrain from considering the entire context and subject-matter in determining the meaning and application of specific words and expressions. On the contrary, courts will carefully consider these matters, and particularly when the subject or class of instruments are of recent origin and use. Neither does it mean that courts will always give to words and expressions their "most" usual application, for to do so would necessarily be to adopt a restricted application. A certain amount of elasticity is necessary in the application of old expressions to new subjects.

With these principles in mind we are to determine what the perils were that were covered by the transportation clause of the policy. The provision is: "(a) Fire, arising from any cause whatsoever, and lightning; (b) while being transported in any conveyance by land or water, the stranding, sinking, collision, burning, or derailment of such conveyance. * * * "

From the nature of this provision there is necessarily a paucity of judicial precedents to guide us in our considerations. This no doubt results from the novelty of transporting one vehicle upon another with any

great frequency. Motor vehicles are in themselves comparative new vehicles. The custom of traveling long distances in vehicles propelled by their own power, and transporting them upon railroad cars, ships, and ferryboats, is of comparative recent origin. What few court decisions there are upon the subject most usually involve interpretation of the so-called collision clause of policies; that is, where the automobile or motor vehicle in question comes in violent contact with some object through its own momentum, rather than being injured and damaged by the collision of the conveyance upon which it is being transported. These cases are, however, in a measure helpful, as they do, of course, involve the question of what is a collision in the circumstances.

Considering the question before us from a literal standpoint, what are the factors involved in the transportation clause of this policy?

First, the injured vehicle must have been in the act of being "transported." Counsel in the instant case have raised no question as to the meaning of that term; indeed, in their stipulation in this case they themselves adopt the same expression, agreeing that the building in which the accident occurred was one in which "automobiles stored therein are transported from floor to floor by means of an electric elevator." So we assume that defendant in error's automobile was being transported.

Second, the automobile must have been in the course of transportation in a "conveyance." What is a conveyance? Webster defines a conveyance as a vehicle, "the instrument or means of carrying or transporting anything from place to place." A vehicle, according to Bouvier's Law Dictionary, "includes every description of carriage or other vehicle or contrivance used or capable of being used as a means of transportation on land."

In Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929, the court said: "A person or corporation operating an elevator to transport persons or property from one floor to another of a building, is as much a carrier as is a person or corporation operating a railroad or stage coach."

So we may assume that the elevator in question was a conveyance, and, not being used upon or in connection with any body of water, it was by land literally.

Third, the one contingency applicable in the instant case, if any, is designated by the expression "collision." What is a collision?

Webster says it is the "act or instance of colliding." Now the etymology of the word "collide" is "col" plus "lædere." "Col," Webster says, is an assimilated form of "com," and that "com" means "together," and that the Latin word or form "lædere" means "to strike." Therefore collision, as stated in the Standard Dictionary, means "to strike together." In the instant case the next inquiry is: What must strike together? Manifestly two objects of some kind. The elevator was certainly an object. Quære: Was the "basement floor or bottom of the elevator shaft" another object? In considering the collision clause of similar policies, some courts have had occasion to consider somewhat similar questions. And it would seem that in the instant case this very point is, in the last analysis, the determining one.

The New Jersey Supreme Court, in Harris v. American Casualty Co., 83 N. J. Law, 641, 85 A. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846, said: "Water and land are 'objects', and an automobile which runs into either or both 'collides' with an object or objects." It would seem that for other and stronger reasons the shaped and prepared bottom of the elevator shaft on the floor of a basement is an object, when considered in opposition to the descending elevator. So it would seem beyond question that, so far as the letter of the policy is concerned, the automobile in question was damaged "while being transported in a conveyance by land" through the "collision" of such conveyance.

But counsel for plaintiff in error insist that such an interpretation would not be in accord with the plain, ordinary, and popular sense of the expression "collision," and upon this point we must concede that the courts are not in entire agreement. Some courts have given more breadth and elasticity to the expression "collision" than others. Counsel for plaintiff in error urges decisions of the Supreme Courts of Wisconsin, California, Texas, and Washington as sustaining their contention, while counsel for defendant in error cite the decisions of the Supreme Courts of New Jersey, New York, Illinois, Pennsylvania, Indiana, and Michigan.

Bell v. American Insurance Co., 173 Wis. 533, 181 N. W. 733, 14 A. L. R. 179, cited by plaintiff in error, was an action to recover damages on an insurance policy insuring plaintiff against damage to his automobile on account of being an accidental collision with "any other automobile, vehicle, or

object." We quote the facts from the opinion in the case: "On the 14th day of September, 1919, plaintiff was driving his automobile down Twenty-First street in the city of Superior. He turned on Logan avenue, with the intention of backing out and turning around. He had crossed the crosswalk by 6 or 8 feet, and practically stopped his car, the power being in neutral, preparatory to backing out. One side of the car gradually settled into the ground and the car tipped over. Plaintiff seeks to recover the damage resulting to the car by its coming into contact with the ground at the time of the upset." Plaintiff recovered in the lower court, and on appeal the Supreme Court of Wisconsin reversed the lower court, holding that the term "collision" did not include mere contact with the ground on the tipping over of the car. We quote that portion of the opinion indicating the view of the Wisconsin court:

"The term 'collision' has not received frequent consideration by courts. A number of cases in which the term has been considered have been collated by the industry of counsel and cited to our attention. We here preserve a reference to the following for the future convenience of bench and bar: Newtown Creek Towing Co. v. Ætna Ins. Co., 163 N. Y. 114, 57 N. E. 302; London Assurance v. Companhia, 167 U. S. 149, 17 S. Ct. 785, 42 L. Ed. 113; Cline v. Western Assurance Co., 101 Va. 496, 44 S. E. 700; Harris v. American Casualty Co., 83 N. J. Law, 641, 85 A. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846; Hardenbergh v. Employers' Liability Co., 80 Misc. Rep. 522, 141 N. Y. S. 502; Stuht v. U. S. Fidelity & Guaranty Co., 89 Wash. 93, 154 P. 137; O'Leary v. St. Paul Fire & Marine Ins. Co. (Tex. Civ. App.) 196 S. W. 575; Graham v. Ins. Co., 220 Mass. 230, 107 N. E. 915. None of these cases, however, deal with a situation similar to the one here presented, unless it be Harris v. American Casualty Company, supra. That case was referred to in Wettengel v. United States 'Lloyds,' 157 Wis. 433, 147 N. W. 360, Ann. Cas. 1915A, 626, where it was said that it had but advisory value in this court, and its soundness was doubted. A further consideration of the subject does not remove the doubts there expressed.

"For the purpose of showing a practical construction of the contract on the part of the company, the plaintiff proved by the agent who delivered the policy in question that the company provided, and sometimes

used, another form covering the damage resulting from collision, which specifically excluded 'damage caused by striking any portion of the roadbed or by striking the rails or ties of street, steam, or electric railroads.' It is argued that because in some instances the company used a form specifically excluding damage caused by striking any portion of the roadbed, or by striking the rails or ties of street, steam, or electric railroads, a purpose is indicated to assume responsibility by the use of the one form for damage excluded by the express terms of the other. Without stating whether, in our opinion, this testimony proves, or tends to prove, a practical construction of the contract here in question by the company, we are clear that it does not tend to prove a practical construction in harmony with that for which respondent contends. As we construe the clause quoted, it has no reference to damage caused by upsets, but it does exclude damage caused by projecting portions of the roadbed in the course of travel. It is common knowledge that an automobile traveling along a highway frequently strikes an unevenness of surface in the roadbed sufficient to do damage to the automobile, and this, we think, is the damage excluded by the clause in the other form sometimes used by the company. Such circumstances were held not to constitute a collision in Doherty v. Ins. Co., 38 Pa. Co. Ct. R. 119. * * *"

Moblad v. Western Indemnity Co., 53 Cal. App. 683, 200 P. 750, was decided by the District Court of Appeal, First District, California. In that case "the driver of said automobile, to avoid striking another automobile, swerved to the outer edge of the roadway, and said roadway gave way, causing said automobile to run down an embankment, and, after leaving said roadway, to overturn, and roll down the side of a mountain; that plaintiff's said automobile did not strike or collide with any object upon the said roadway, nor did said automobile strike or collide with any object upon the said embankment or mountain side prior to the time said automobile overturned."

The court then said: "We are cited to no case in this state where the facts are similar to the facts of the present case, but our attention has been called to the recent case of Bell v. American Ins. Co. [173 Wis. 533] 181 N. W. 733 [14 A. L. R. 179]."

The court then quotes with approval from that case, and, continuing, says: "In the instant case, the damage to plaintiff's car was caused proximately by its turning over on the edge of the road. Its subsequent revolutions and consequent damage were but the operation of physical laws set in motion when it turned over on the edge of the road. The proximate and only cause of the accident was, not a collision, but the upsetting of the automobile."

Ploe v. International Indemnity Co., 128 Wash. 480, 223 P. 327, 35 A. L. R. 999, was a case very similar in its facts to the Moblad Case just referred to. The Washington court apparently followed the Moblad Case, holding that, where the automobile got beyond the control of the driver and left the road, striking a stump, capsized, and rolled to its destruction, there was no collision within the meaning of the policy, which insured against "collision with another automobile, vehicle, or object."

Harris v. American Casualty Co., decided by the New Jersey Court of Errors and Appeals, 83 N. J. Law, 641, 85 A. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846, adopts a very liberal interpretation of the term "collision." In that case the policy covered loss or damage "resulting solely from collision with any moving or stationary object." Plaintiff's automobile was being driven over a bridge on a highway. The sides of the bridge were protected by guard rails. The car crashed through the rail on one side and was precipitated into the stream below. The machine turned upside down after leaving the bridge, and rested in an inverted position in the bed of the stream. We quote from the opinion:

"As there could have been no collision without the presence of an object with which to collide, we will first consider whether the water of the stream and the earth beneath it were objects within the meaning of the policy. The Standard Dictionary defines 'object' as 'anything which comes within the cognizance or scrutiny of the senses; especially anything tangible or visible; * * * anything, whether concrete or abstract, real or imaginary, than may be perceived or apprehended by the mind; that of which the understanding has knowledge.' Water and land, therefore, are objects—physical objects. They are not abstract or imaginary, but tangible, visible, concrete, and real, and may be perceived and apprehended by the mind; the understanding has knowledge of them.

"'Collision' means the act of colliding; a striking together; violent contact. See Standard Dictionary. The Supreme Court of the United States in London Assurance

Co. v. Companhia De Moagens Do Barreiro, 167 U. S. 149, at page 155, 17 S. Ct. 785, at page 787, 42 L. Ed. 113, at page 119, speaking to the subject of collision in admiralty law, said: 'As to the first, we think that the vessel was "in collision" within the meaning of the language used in the certificate which represented and took the place of the policy. It was not necessary that the vessel should itself be in motion at the time of the collision. If, while anchored in the harbor, a vessel is run into by another vessel, it would certainly be said that the two vessels had been in collision, although one was at anchorage and the other was in motion. * * * It is impossible, as we think, to give a certain and definite meaning to the words "in collision," or to so limit their meaning as to plainly describe in advance that which shall and that which shall not amount to a collision, within the meaning of this policy.' "

The court, following the reasoning quoted, held that there was a collision, and that the accident came within the provision of the policy, reversing the trial court.

Polstein v. Pacific Fire Ins. Co., decided by the City Court of New York, reported in 122 Misc. Rep. 194, 203 N. Y. S. 362, is similar in its facts to Ploe v. International Indemnity Co., supra, and the court, in deciding the case, reaches a diametrically opposite conclusion, holding that the impact with the rock at the bottom of the embankment was a collision.

Hardenburgh v. Employers' Liability Assurance Corporation, also decided by the City Court of New York, 78 Misc. Rep. 105, 138 N. Y. S. 662, was very similar to the Polstein Case, supra, and it was there held that the impact with the shoulder of the roadbed was a collision.

Lepman v. Employers' Liability Assurance Corporation, 170 Ill. App. 379, was a case where the automobile was injured by collision with a brick. There was a verdict and judgment for the plaintiff, and the case was affirmed on appeal.

Southern Casualty Co. v. Johnson, 24 Ariz. 221, 207 P. 987, was a case where the automobile was being driven upon a highway, and the driver, to avoid collision with another car, swerved the car to the side, when it left the road and ran against an embankment. After reviewing many of the cases herein cited, including the California and Wisconsin cases, the court held that there was a collision within the meaning of the policy.

Universal Service Co. v. American Ins. Co., 213 Mich. 523, 181 N. W. 1007, 14 A. L. R. 183, was a case in which a motor truck was struck by a falling scoop of a steam shovel. It was held in that case that there was a collision within the meaning of the policy.

[3] It will be observed that all of the cases referred to are cases under the collision clause of the policy sued on, and some of them would seem to turn upon a consideration of the question whether the collision or the mere tip-over of the car before or after the collision was the proximate cause of the damage. That factor, however, is not present in the instant case. The question now being determined is, not whether the collision clause of the policy is applicable, but whether the transportation clause covers the situation. That clause does not contemplate the damage to the car by reason of an impact while the automobile is moving on its own power or momentum, or whether injured by any moving object. It contemplates the collision of the conveyance upon which the automobile is being carried, and the insurance company would be liable, regardless of the cause of such collision.

[4] After a careful review of the cited cases we are constrained to the conclusion that there was a collision of the elevator with the bottom of the elevator shaft within the meaning of the policy sued on, and that the trial court committed no error.

[5] The question as to whether the incident and damage in controversy is covered by the collision clause of the policy is not directly presented on this record by any assignment of error. The trial court held that the accident was not within the collision clause of the policy. But, this ruling being in favor of plaintiff in error here, no assignment was made by it. Defendant in error, however, attempts to assign error on her brief for this ruling. This court is without jurisdiction to consider that question on the assignment of the defendant. Cross-errors are not assignable in the federal courts. Guarantee Co. of North America v. Phenix Ins. Co., 124 F. 170, 59 C. C. A. 376. Whether we might consider this question under plaintiff in error's assignment, upon the authority of Ramsay v. Crevlin, 254 F. 813, 166 C. C. A. 259, had we determined that the accident was not within the transportation clause, becomes academic, and we find it unnecessary to decide in this case whether the accident was covered by the collision clause of the policy in question, in-

asmuch as the case must be affirmed on the holding that the accident was covered by the transportation clause.

The case is therefore affirmed.